**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| JULIA JIN-WOLFSON, *on behalf of herself and all others similarly situated,*<br><br>        Plaintiff,<br><br>v.<br><br>LAFAYETTE COLLEGE,<br><br>        Defendant. | Case No.<br><br>**COMPLAINT – CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Julia Jin-Wolfson ("Plaintiff"), by and through her undersigned counsel, brings this Class Action Complaint against Defendant Lafayette College ("Lafayette" or "Defendant"), and alleges as follows based upon information and belief, except as to the allegations specifically pertaining to her, which are based on personal knowledge.

## NATURE OF THE ACTION

1.     Higher education is no different from any other industry in as much as consumers (*i.e.*, students) have the ability to shop between different educational products offered by competitive institutions before ultimately purchasing the product that is right for them.

2.     Some colleges and universities offer an educational product without access to a campus or in-person community, while others offer an educational

product with access to a varied suite of services, activities, facilities and experiences through an on-campus, in-person educational experience.

3.      Lafayette offers students services, activities, facilities, and experiences delivered in a traditional format, in-person on its campus in Easton, Pennsylvania.

4.      Plaintiff, an undergraduate student during the Spring 2020 quarter, paid tuition and fees to enroll in Lafayette's on-campus, in-person education program, including all the benefits and services associated therewith for the entirety of the term.

5.      Plaintiff's paid-for experience was not provided throughout the Spring 2020 quarter, when that in-person educational experience was taken away from Plaintiff and other students at Lafayette.

6.      In March 2020, in response to the outbreak of the SARS-CoV-2 virus, the virus that causes the COVID-19 disease (the "COVID-19 pandemic"), Lafayette, like many other colleges and universities, transitioned to remote online-only education, canceled on-campus recreational events, canceled student activity events, and ordered students to refrain from going on campus.

7.      As a result, all on-campus education, services, and amenities were not available to Lafayette students for approximately half of the Spring 2020 semester.

8.      Despite the harsh reality that students could no longer enjoy the benefit of the bargain for which they pre-paid, Lafayette refused to provide a prorated refund

of tuition or fees tied to its on-campus education, services, and amenities that were not available to students during the portion of the Spring 2020 semester when campus was closed.

9.    Accordingly, Lafayette's students lost the benefits of the bargain for services and the experience they paid for but could not access or use following the school's transition to remote learning in March 2020.

10.    By not giving prorated refunds for tuition or fees charged for on-campus education and services not provided, Lafayette breached its contracts with students or was otherwise unjustly enriched.

11.    It cannot be disputed that the circumstances underlying this legal action are unfortunate and unprecedented. However, the students did not choose these circumstances, and they certainly did not agree to pay tuition and fees for online-only education and services.

12.    It is unfair and unlawful for Lafayette to retain tuition and fees for campus-based in-person education and services not being provided and to pass the financial losses on to its students.

13.    Importantly, Plaintiff does not challenge Defendant's discretion in adhering to federal, state, and local health guidelines, but rather challenges Lafayette's decision to retain the tuition and fees, paid by Plaintiff and other students for in-person education, experiences, access to campus, and services, without

providing such for a substantial portion of the Spring 2020 semester.

14.    Plaintiff brings this class action for damages and restitution resulting from Lafayette's retention of the tuition and fees paid by Plaintiff and the other putative Class members for in-person education and services not being provided. Specifically, this lawsuit seeks disgorgement of the prorated, unused amounts of the fees that Plaintiff and other putative Class members paid, but for which they were not provided the benefit, as well as a partial prorated tuition reimbursement representing the difference in fair market value between the on-campus product for which they had paid, and the online product that they received.

## PARTIES

15.    Plaintiff, Julia Jin-Wolfson is an adult, who at all relevant times, is a resident and citizen of the State of New York. She paid tuition and fees for the Spring 2020 semester. During the Spring 2020 semester, Plaintiff was forced to take her classes remotely, refrain from visiting campus, and prevented from utilizing various on-campus services for which she paid.

16.    Plaintiff was an undergraduate student enrolled at Lafayette for the Spring 2020 term, which was scheduled to run from approximately January 27, 2020 to May 18, 2020. Plaintiff did not have access to the campus for the substantial portion of Spring semester because the campus was closed due to the COVID-19 pandemic. Plaintiff paid tuition and fees for an in-person educational experience for

the entirety of the Spring 2020 semester, the benefits of which she lost because Lafayette closed the campus and cut off access to on-campus services, facilities, and extracurricular activities.

17.     Defendant Lafayette is a private liberal arts college founded in 1826. Lafayette offers over 50 undergraduate programs at its campus in Easton, Pennsylvania. Lafayette enrolls students from nearly every state and from dozens of foreign countries. Lafayette is a citizen of Pennsylvania.

## JURISDICTION AND VENUE

18.     The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interests and costs.

19.     This Court has personal jurisdiction over Defendant because many of the acts and transactions giving rise to this action occurred in this District, and because Defendant conducts substantial business by operating its principal campus in this District, and soliciting students residing in this District to attend its institution.

20.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because many of the acts and transactions giving rise to this action occurred in this District,

specifically, the contracts that are the subject of this action were formed in this District, and the performance and breach of contract also occurred in this District.

## FACTUAL ALLEGATIONS.

21.     Prior to the COVID-19 pandemic, Lafayette had a longstanding tradition of offering its courses in face-to-face classroom settings on campus. In accordance with this prior course of conduct, Lafayette scheduled all or nearly all of its Spring 2020 courses to be in-person and on-campus.

22.     To enroll in classes, Lafayette students are required to pay tuition and fees. The Spring 2020 semester was scheduled to commence on or about January 27, 2020 and end on or about May 18, 2020.[1]

23.     Tuition and fees for the Spring 2020 semester was $27,256 for full-time students plus a $240 activity and technology fee ("Mandatory Fee").[2]

24.     Lafayette uses its marketing materials, course catalog, and other bulletins to solicit students for its in-person, on-campus academic programs.

25.     On its website, Lafayette describes itself as "[a] beautiful campus overlooking the historic Delaware River. A tradition-rich liberal arts college. A

---

[1] *Academic Calendar 2019-2020*, Lafayette College, https://registrar.lafayette.edu/wp-content/uploads/sites/193/2018/08/2019-20-Calendar-Edited.pdf (last visited Oct. 4, 2023)

[2] *College Costs,* Lafayette College, https://web.archive.org/web/20191203190034/https://admissions.lafayette.edu/college-costs/ (captured Dec. 3, 2019).

selective enrollment small enough to make you feel like you belong to a real community."[3]

26.    Lafayette makes the in-person nature of its educational program a central element of its identity, describing on a webpage entitled "About Us" that "[a]t Lafayette, doing is as much a part of learning as class time. Here, hands-on experience is how we revolutionize the world."[4]

27.    Similarly, on its webpage disclosing the cost of tuition and fees, Lafayette represents to prospective students that one of the core benefits of paying Lafayette's tuition is "you will get close working relationships with faculty and staff and first-class facilities and equipment."[5]

28.    Further, Lafayette promotes its in-person, on-campus experiences through its housing policies. Lafayette generally does not allow students to live off-campus unless they commute from a parent or guardian's home or have "non-traditional" circumstances such as marriage or dependent children.[6]

---

[3] *About Us: Lafayette at a Glance*, Lafayette College, https://web.archive.org/web/20190715201212/https://about.lafayette.edu/lafayette-at-a-glance (captured Jul. 15, 2019).

[4] *About Us*, Lafayette College, https://web.archive.org/web/20190909152558/https://about.lafayette.edu (captured Sep. 9, 2019).

[5] *College Costs, supra* note 6.

[6] *Commuters and Non-traditional Students*, Lafayette College, https://web.archive.org/web/20190909163135/https://reslife.lafayette.edu/commuters/ (captured Sep. 9, 2019).

29.     Lafayette describes its on-campus housing requirement as a central component of the academic experience, stating that its Office of Residence Life "furthers the mission of Lafayette College as an academic institution."[7] Lafayette represents that the Office of Residence Life "provides services that promote the achievement of learning objectives and personal well-being"[8] with a residential program that is "designed to offer increasing levels of independence and autonomy to coincide with a student's development over four years."[9]

30.     Lafayette advertises specific benefits of its on-campus residential requirement, promoting that "Living in an Academic Community," *i.e.* on-campus housing, will:

> offer an educational experiences [sic] which may or may not be outside the residents' major or previous knowledge base; challenge residents to think critically about new or previously acquired knowledge; engage residents in intellectual discourse outside the classroom."[10]

31.     Lafayette also touts the benefits of other on-campus resources. For example, Lafayette represents that students "enjoy an amazing array of social,

---

[7] *Residence Life: About Us*, Lafayette College, https://web.archive.org/web/20190909152947/https://reslife.lafayette.edu/about-us/ (captured Sep. 9, 2019).

[8] *Id.*

[9] *Residence Life*, Lafayette College, https://web.archive.org/web/20190715202257/https://reslife.lafayette.edu/ (captured Jul. 15, 2019).

[10] *Living in an Academic Community*, Lafayette College, https://web.archive.org/web/20190909164922/https://reslife.lafayette.edu/living-in-an-academic-community/ (captured Sep. 9, 2019).

cultural, artistic, and athletic activities" that make Lafayette "much more than a college."[11]

32.    Many of these activities and events are available through student clubs and organizations, as Lafayette acknowledges:

> Studies show that students who are involved in activities outside the classroom—in clubs, athletics, the arts, and volunteering—as well as engaged in the classroom, are happier and more successful in college. Lafayette boasts more than 200 opportunities to get involved and if you can't find something that interests you, you can start your own club.[12]

33.    Lafayette also boasts of its recreational facilities and intramural sports offerings: "[w]ith about 20 different sport or game offerings and nearly 600 students competing each year, this is one of the most popular programs on campus!"[13]

34.    Lafayette describes its campus facilities as a significant benefit of enrollment, including:

    a.    Kirby Library, with a "classically-inspired, oak-paneled reading room [that] is among the most beautiful interior spaces on campus;"[14]

---

[11] *Campus Life*, Lafayette College, https://web.archive.org/web/ 20190909152536/https://campuslife.lafayette.edu (captured Sep. 9, 2019).
[12] *Id.*
[13] *Intramural Sports*, Lafayette College, https://web.archive.org/web/ 20190909152543/https://recreation.lafayette.edu/intramurals (captured Sep. 9, 2019).
[14] *About the Lafayette Libraries*, Lafayette College, https://web.archive.org/ web/20190909172416/https://library.lafayette.edu/about/about-the-lafayette-libraries (captured Sep. 9, 2019).

b. Skillman Library, expanded and renovated in 2004 to be "spacious and light-filled [with] ample room for learning and study, technology, and library collections;"[15]

c. Williams Center Gallery, Grossman Gallery, and Lass Gallery, three art venues that "present an eclectic range of exhibitions and related activities to enhance the appreciation of art and support the educational mission of Lafayette;"[16] and

d. Several music and theater performance venues, ranging "[f]rom major performances and exhibitions held in the campus' flagship arts destination, the Williams Center for the Arts, to emerging authors reading their work in a small seminar room . . . ."[17]

35.    Moreover, in advertising and soliciting students to attend the college, Lafayette advertises its location as a central element of the academic experience. Lafayette advertises that: "Easton's many charms include its stunning architecture; the surrounding natural beauty of mountains, rivers, and valleys; [and] cultural offerings from a vibrant arts scene," and represents to students that they "can spend

---

[15] *Id.*

[16] *Art Galleries*, Lafayette College, https://web.archive.org/web/20190909153014/ https://galleries.lafayette.edu (captured Sep. 9, 2019).

[17] *Venues*, Lafayette College, https://web.archive.org/web/20190909160221/ https://the-arts.lafayette.edu/arts-venues/ (captured Sep. 9, 2019).

leisurely afternoons and weekends exploring the College Hill area with its tree-lined sidewalks and mix of charming residences and unique businesses."[18]

36.    Plaintiff and members of the Class paid their tuition in the Spring 2020 semester to enjoy everything Lafayette offered them, including on-campus resources, campus community, and in-person education for the entire Spring 2020 semester.

37.    When enrolling for Spring 2020 semester, Plaintiff and members of the Class chose to enroll in Lafayette's in-person educational program, with face-to-face instruction to obtain the benefits outlined above.

38.    Plaintiff and members of the Class were also required to pay the Mandatory Fee of $240 for the Spring 2020 semester, described as a fee for activities and technology.[19]

39.    Plaintiff and the members of the Class paid the Mandatory Fee for the Spring 2020 semester so they could benefit from on-campus services and facilities offered by Lafayette to its students for the entire Spring 2020 semester.

40.    Despite Plaintiff and Class Members paying the Spring 2020 term tuition and Mandatory Fee to attend Lafayette for an in-person and on-campus

---

[18] *About Easton*, Lafayette College, https://web.archive.org/web/20190909160537/ https://campuslife.lafayette.edu/about-easton (captured Sep. 9, 2019).
[19] *College Costs,* Lafayette College, https://web.archive.org/web/20191203190034/ https://admissions.lafayette.edu/college-costs/ (captured Dec. 3, 2019).

educational experience, Lafayette failed to provide the promised in-person education for a substantial portion of the semester, instead providing only online instruction after March 13, 2020.

A.   **In Response to COVID-19, Lafayette Closed Campus, Preventing Access to its Facilities, Services, Housing, and Dining, and Cancelled All In-Person Classes.**

41.   On March 11, 2020, Lafayette announced that it was moving all courses to remote instruction starting March 23, 2020, the first Monday after Spring Break, and canceled all events at the college starting on March 16, 2020.[20] Lafayette also limited building access and closed libraries, laboratories, computer labs and classrooms to students.[21] Lafayette anticipated returning to in-person instruction and regular services by April 6, 2020.[22]

42.   On or around March 19, 2020, Lafayette extended remote-only instructional policies and campus closures through the end of Spring 2020

---

[20]   *Coronavirus    Update,*   Lehigh    Valley    Live   (Mar.    10,    2020), https://www.lehighvalleylive.com/news/2020/03/coronavirus-update-the-latest-lehigh-valley-advisories-closures-and-cancellations.html (last visited Oct. 4, 2023).
[21]   *COVID-19    Update:    March    17*,   Lafayette   College   (Mar.   17,   2020), https://covid19.lafayette.edu/2020/03/17/covid-19-update-march-17   (last   visited Oct. 4, 2023).
[22]   *Id.*

semester.[23] Students were not allowed to return to their on-campus housing, except to schedule a time to retrieve their belongings.[24]

43.     Lafayette did not hold any in-person classes for students from March 13, 2020 through the end of Spring 2020 semester. All Spring 2020 classes after March 13, 2020 were only offered in a remote online format with no in-person instruction or interaction.

44.     Most of the services for which the Mandatory Fee was assessed were also terminated or cancelled at or about this time, such as access to student health and wellness facilities, programs or services; studios and study spaces; fitness facilities; and activities and events offered by student clubs and organizations.

45.     Although Lafayette provided prorated refunds for residence hall rooms and dining hall plans, Lafayette refused to adjust its tuition policies, including its policies governing tuition or the Mandatory Fee. Under those policies, Lafayette's shift to exclusive remote online instruction for the remainder of Spring 2020

---

[23] *Follow-up to President Byerly's Announcement*, Lafayette College (Mar. 19, 2020),     https://covid19.lafayette.edu/2020/03/19/follow-up-to-president-byerlys-announcement (last visited Oct. 4, 2023).
[24] *Residence Life: Retrieving Belongings*, Lafayette College (Mar. 19, 2020), https://covid19.lafayette.edu/2020/03/19/retrieving-your-belongings-from-campus-housing (last visited Oct. 4, 2023).

semester occurred after the deadline for students to receive any refund by withdrawing from courses.[25]

## B. Students Experienced Significant Losses, in Many Cases of Borrowed Funds as a Result of Lafayette's Conduct.

46.    At Lafayette, the median federal loan debt among borrowers who completed their undergraduate degree is $16,000.[26] The median monthly federal loan payment (if it were repaid over 10 years at 5.05% interest) for student federal loan borrowers who graduated from Lafayette is $170.[27]

47.    With the campus shut down for a substantial portion of the semester, Plaintiff and the proposed Class have been deprived of the benefits of the on-campus educational services and access as set forth above. Nevertheless, Lafayette has refused to refund any portion of the tuition or the Mandatory Fee, despite not providing the on-campus educational, services, and access for which students paid.

48.    Students attending Lafayette's Spring 2020 semester did not choose to attend an online institution of higher learning, but instead chose to enroll in Lafayette's in-person, on campus educational program.

---

[25] *Lafayette College 2019-2020 Catalog*, https://registrar.lafayette.edu/wp-content/uploads/sites/193/2021/09/Lafayette-College-19_20.pdf at 25 (0% refund for withdrawals occurring after the 7th week of the semester).
[26] *Lafayette College Tuition & Financial Aid*, U.S. News, https://www.usnews.com/best-colleges/lafayette-college-3284/paying (last visited Oct. 4, 2023).
[27] *Id.*

49.     During the Spring 2020 semester, Lafayette principally used programs by which previously recorded lectures were posted online for students to view on their own, or by virtual Zoom meetings. Therefore, there was a lack of classroom and experiential learning and interaction between students and professors and among students that is material to the product that students paid for.

50.     The online formats used by Lafayette did not require memorization or the development of strong study skills given the absence of any possibility of being called on in class and the ability to consult books and other materials when taking exams.

51.     Students were deprived of the opportunity for hands-on, experiential, and collaborative learning and in-person dialogue, feedback, and critique, for which they were promised and pre-paid for.

52.     Access to facilities such as libraries, laboratories, computer labs, and study rooms, integral to a college education, and access to the myriad activities offered by campus life that foster social development, leadership, wellness, independence, and networking for future careers, are all substantial and materials parts of the basis upon which Lafayette can charge the tuition it charges. Contrary to Lafayette's promises, these services and facilities were not provided.

53.     Lafayette has not made any refund of any portion of the tuition Plaintiff and the members of the Class paid for the Spring 2020 semester for the period it moved to online distance learning.

54.     Nor has Lafayette refunded any portion of the Mandatory Fee it collected from Plaintiff and the members of the Class for the Spring 2020 semester even though Defendant closed or ceased operating the services and facilities for which the Mandatory Fee was intended to pay.

55.     Plaintiff and the Class are therefore entitled to a *pro rata* refund of the tuition and Mandatory Fee they paid Lafayette for the portion of the Spring 2020 semester after classes moved from in-person to online and facilities were closed.

## <u>CLASS ACTION ALLEGATIONS</u>

56.     Plaintiff brings this case individually and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the class defined as:

> All Lafayette College students who satisfied their payment obligations for the Spring term 2020 tuition and/or Mandatory Fees and enrolled in at least one in-person on-campus class (the "Class").

57.     Specifically excluded from the Class are all students who received full Lafayette-funded scholarships for the Spring 2020 term, Defendant, Defendant's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities

controlled by Defendant, and its heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or Defendant's officers.

58.     Subject to additional information obtained through further investigation and discovery, Plaintiff reserves the right to amend, narrow, or expand the class definitions.

59.     **Numerosity:** The Class is so numerous that joinder of all members is impracticable. Although the precise number of Class members is unknown to Plaintiff, Lafayette reported thousands of students enrolled for the 2019-2020 school year. The names and addresses of all such students are known to Lafayette and can be identified through Lafayette's records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

60.     **Commonality:** There are questions of law and fact common to the members of the Class including, without limitation:

> a.      Whether Lafayette accepted money from Plaintiff and the Class members in exchange for the promise to provide an in-person and on-campus educational experience, as well as certain facilities and services throughout the Spring 2020 semester;

b.      Whether Lafayette breached its contracts with Plaintiff and the members of the Class by failing to provide them with an in-person and on-campus educational experience for a substantial portion of the Spring 2020 semester;

c.      Whether Lafayette breached its contracts with Plaintiff and the Class by transitioning to remote education, and failing to provide the services and facilities to which the Mandatory Fee pertained;

d.      Whether Lafayette was unjustly enriched by retaining a portion of the tuition and Mandatory Fee during the period of time Lafayette was closed during the Spring 2020 semester, and Plaintiff and the members of the Class were denied an in-person and on-campus educational experience and access and the services and facilities for which the Mandatory Fee was paid; and

e.      The amount of damages and other relief to be awarded to Plaintiff and the Class members.

61.    **Typicality:** Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and the other Class members each contracted with Defendant for it to provide an in-person and on-campus educational experience for the tuition they paid and the services and facilities for the Mandatory Fee that they paid, that Lafayette stopped providing for the remainder for the Spring 2020 semester.

62.    **Adequacy of Representation:** Plaintiff is an adequate class representative because his interests do not conflict with the interests of the other Class members whom he seeks to represent. Plaintiff has retained competent counsel who are experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously. Class members' interests will be fairly and adequately protected by Plaintiff and his counsel.

63.    **Predominance.** Common questions of law and fact predominate over any questions affecting only individual Class Members. Similar or identical violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action. For example, Defendant's liability and the fact of damages is common to Plaintiff and each member of the Class. If Defendant breached its contracts to Plaintiff and Class members, then Plaintiff and each Class member suffered damages by that conduct.

64.    **Superiority:** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members is relatively small compared to the burden and expense that would be required to individually litigate their claims against Lafayette, making it impracticable for Class

Members to individually seek redress for Lafayette's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individual litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

65.   **Ascertainability:** Members of the Class are ascertainable. Class membership is defined using objective criteria and Class members may be readily identified through Defendant's books and records.

<u>**FIRST CLAIM FOR RELIEF**</u>
**BREACH OF IMPLIED CONTRACT**
**(On Behalf of Plaintiff and the Class)**

66.   Plaintiff repeats and re-alleges the factual allegations above, as if fully alleged herein.

67.   Plaintiff brings this claim individually and on behalf of the members of the Class.

68.   When Plaintiff and Class members paid Lafayette tuition and the Mandatory Fee for the Spring 2020 semester, Lafayette agreed to, among other things, provide an in-person and on-campus educational instruction, services and access, as well as the services and facilities to which the Mandatory Fee they paid

pertained throughout the Spring 2020 semester. As a result, Plaintiff and each member of the Class entered into binding implied contracts with Lafayette.

69.    When entering into implied contracts, Plaintiff and Class members reasonably believed and expected that Lafayette would provide them with an on-campus and in-person educational instruction, services, access, as opposed to remote learning, and use of Defendant's facilities and services for the duration of the entire Spring 2020 semester as mutually agreed and intended in accordance with Defendant's publications, including but not limited to, its marketing materials, course catalogues, and other bulletins, as well as Lafayette's history and prior course of providing in-person and on-campus education.

70.    Plaintiff and Class members fully performed their obligations under their implied contracts with Lafayette by registering for classes and paying tuition and the Mandatory Fee.

71.    Defendant is in possession of all contracts, materials, circulars, advertisements and the like between Plaintiff and members of the Class on one hand, and Lafayette on the other.

72.    Lafayette breached its contracts with Plaintiff and the Class by failing to provide the promised in-person and on-campus educational instruction, services, and access, as well as the services and facilities to which the Mandatory Fee pertained throughout the Spring 2020 semester, yet has retained monies paid by

Plaintiff and the Class for an on-campus and in-person educational experience and access to these services and facilities during a substantial portion of the Spring 2020 semester. Plaintiff and the members of the Class have therefore been denied the benefit of their bargain.

73.     Plaintiff and the members of the Class have suffered damages as a direct and proximate result of Lafayette's breach in the amount of the prorated portion of the tuition and Mandatory Fee they each paid equal to the reduction in contracted for education and services during the Spring 2020 semester when Lafayette discontinued in-person classes and closed campus facilities.

74.     Lafayette should return such portions of the tuition and Mandatory Fee to Plaintiff and each Class Member.

<u>**SECOND CLAIM FOR RELIEF**</u>
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Class)**
**In the Alternative**

75.     Plaintiff repeats and re-alleges the factual allegations above, as if fully alleged herein.

76.     Plaintiff brings this claim individually and on behalf of the members of the Class in the alternative to the First Claim for Relief, to the extent it is determined that Plaintiff and the Class do not have an enforceable contract with Lafayette regarding the relief requested.

77.     Plaintiff and members of the Class conferred a benefit on Lafayette in the form of tuition and the Mandatory Fee paid for the Spring 2020 semester. The payment of this tuition and Mandatory Fee was to be in exchange for an in-person, on-campus educational instruction, services, and access to be provided to Plaintiff and the members of the Class throughout the entire Spring 2020 semester.

78.     Lafayette knowingly accepted the benefits conferred upon it by Plaintiff and Class members.

79.     Lafayette has retained the full benefit of the tuition and Mandatory Fee payments made by Plaintiff and the members of the Class for the Spring 2020 term—without providing the benefits that Plaintiff and Class members were owed.

80.     For example, Lafayette failed to provide Plaintiff and Class Members access to many on-campus facilities and services throughout the entire Spring 2020 semester, yet Lafayette assessed and retained Plaintiff and Class Members with tuition and fees that covered the cost of upkeep and maintenance of such facilities and services.

81.     Indeed, as a result of closing campus and moving classes online, Lafayette saved significant sums of money in the way of reduced utility costs, reduced meaning and staffing requirements, reduced or eliminated hours for hourly employees, reduced or eliminated hours for paid work students, and otherwise.

23

82.     The costs incurred for having an online only program are significantly lower than the overhead needed to provide classes and services on campus.

83.     As a result of Lafayette's retention of all the tuition and Mandatory Fee paid by Plaintiff and members of the Class, during the period of time Lafayette was closed, Plaintiff and the members of the Class were denied the in-person and on-campus educational instruction, services, and access and the services and facilities for which the Mandatory Fee were paid. This was unjust and inequitable under the circumstances.

84.     Allowing Lafayette to retain the full benefit of tuition and Mandatory Fees paid for in-person on campus education and experiences, after reducing the benefit provided and the costs incurred by Lafayette, unjustly enriched the Defendant.

85.     Accordingly, Lafayette has been unjustly enriched and should return the prorated portion of the tuition and Mandatory Fee that Plaintiff and Class members each paid equal to the reduction in benefit for education and services during the portion of the Spring 2020 semester when Lafayette discontinued in-person classes and closed campus facilities.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, prays for relief as follows:

(a)     For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

(b)     For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(c)     For compensatory damages in an amount to be determined by the trier of fact;

(d)     For an order of restitution and all other forms of equitable monetary relief;

(e)     Awarding Plaintiff reasonable attorneys' fees, costs, and expenses;

(f)     Awarding pre- and post-judgment interest on any amounts awarded; and

(g)     Awarding such other and further relief as may be just and proper.

## **DEMAND FOR TRIAL BY JURY**

A jury trial is demanded on all claims so triable.

Dated:  October 17, 2023                    Respectfully submitted,

/s/ Gary F. Lynch

Gary F. Lynch
Jamisen A. Etzel
Nicholas A. Colella
**LYNCH CARPENTER, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, Pennsylvania 15222
Telephone: 412-322-9243
Facsimile: 412-231-0246
gary@lcllp.com
jamisen@lcllp.com
nickc@lcllp.com

Michael A. Tompkins, Esq.*
Anthony Alesandro, Esq.*
**LEEDS BROWN LAW, P.C.**
One Old Country Road, Suite 347
Carle Place, NY 11514
(516) 873-9550
mtompkins@leedsbrownlaw.com
aalesandro@leedsbrownlaw.com

*pro hac vice forthcoming*

*Counsel for Plaintiff and Proposed Class*