Exhibit 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JULIA JIN-WOLFSON, | Case No. 5:23-cv-04005-JMG |
| Plaintiff. | |
| v. | |
| LAFAYETTE COLLEGE, | |
| Defendant. | |

## STIPULATION OF SETTLEMENT

## EXHIBITS

**Exhibit A**:    [Proposed] Order Preliminarily Approving Settlement, Certifying the Settlement Class for Settlement Purposes, and Appointing Class Counsel and Class Representative for the Settlement Class

**Exhibit A-1**:    Short Form Notice of Proposed Class Action Settlement and Hearing

**Exhibit A-2**:    Long Form Notice of Proposed Class Action Settlement and Hearing

**Exhibit B**:    [Proposed] Final Judgment

## STIPULATION OF SETTLEMENT

This Stipulation of Settlement ("Settlement") is made as of March 21, 2025, by and among the following parties, as hereinafter defined: (1) Julia Jin-Wolfson, on behalf of herself and the Settlement Class, by and through Class Counsel in this Action; and (2) Lafayette College ("Lafayette"), by and through its attorneys in this Action. The Settlement Class Representative and Lafayette are individually each a "Party" and collectively, the "Parties."

## RECITALS

On October 17, 2023, Plaintiff Julia Jin-Wolfson ("Named Plaintiff") filed a class action Complaint in the United States District Court for the Eastern District of Pennsylvania styled *Jin-Wolfson v. Lafayette College*, Case No. 5:23-cv-04005 (ECF 1) (the "Action").

The Complaint alleged that Named Plaintiff and putative class members are entitled to refunds of tuition and fees because, beginning in March 2020, Lafayette provided classes remotely in response to the COVID-19 pandemic. The Complaint alleged that Named Plaintiff and all other Lafayette students who paid tuition and fees for the Spring 2020 semester had an implied contract with Lafayette that entitled them to in-person instruction, and that by switching to remote education in response to the pandemic, Lafayette breached that implied contract. Named Plaintiff also contended that Lafayette's shift to remote education gave rise to claims of unjust enrichment. Named Plaintiff sought damages, including the prorated portion of the tuition and fees she paid for the portion of time in the Spring 2020 semester during which Lafayette discontinued in-person classes and closed certain facilities. The Complaint sought certification of a putative class of students comprising:

**The Class:**

All Lafayette College students who satisfied their payment obligations for the Spring term 2020 tuition and/or Mandatory Fees and enrolled in at least one in-

1

person on-campus class (the "Class").

(*Id.* ¶ 56.)

On December 7, 2023, Lafayette filed its Answer and Affirmative Defenses (ECF 9), which denied that it breached any contract with Named Plaintiff or was unjustly enriched, and asserted that its actions were compelled by governmental shut-down orders. The Parties participated in the Rule 16 Conference before the Court on February 29, 2024 (ECF 20). Thereafter, the Parties engaged in extensive class, merits, and expert discovery, participated in multiple depositions, and exchanged detailed information relating to the merits of the case. While discovery was ongoing, the Parties engaged in potential early resolution discussions. On July 10, 2024, the Parties moved to stay the Action pending mediation (ECF 26), which was granted on July 24, 2024 (ECF 27). On August 21, 2024, the Parties held a mediation session in front of the Honorable Thomas J. Rueter (Ret.). During that mediation, the Parties ultimately reached an impasse (ECF 28), and the Court lifted the stay (ECF 29).

On November 7, 2024, Plaintiff moved to certify a class consisting of: "All Lafayette College students whose payment obligation of tuition and/or fees was satisfied for the Spring 2020 semester and who were enrolled in at least one in-person on-campus class." (ECF 39). The proposed definition of the class excluded students who received full Lafayette-funded scholarships covering all payment obligations for the Spring 2020 term. Class certification was fully briefed as of December 12, 2024, and no decision has yet been issued by the Court.

While the Parties continued to engage in merits discovery, the Parties again began discussing early resolution. After numerous demands and counter-offers, the Parties reached an agreement in principle and signed a term sheet on February 3, 2025. Over the ensuing weeks, the

Parties negotiated the final terms of the Settlement and its supporting exhibits, as fully incorporated herein.

Named Plaintiff believes that the claims asserted in the Action have merit. Nonetheless, Named Plaintiff and her counsel recognize that Lafayette has raised, and intends to continue to raise, factual and legal defenses in the Action that present a risk that Named Plaintiff and any putative class members may not prevail at trial or on appeal. Named Plaintiff and her counsel have also taken into account the costs, risks, and delays associated with the continued litigation of the Action, including continued retention of experts and litigating through trial. Therefore, Named Plaintiff and her counsel believe that it is desirable that the Released Claims be fully and finally compromised, settled, and resolved with prejudice, and barred under the terms and conditions set forth in this Settlement.

Based on their comprehensive examination and evaluation of the law and facts relating to the matters at issue in the Action, Named Plaintiff's counsel has concluded that the terms and conditions of this Settlement are fair, reasonable, and adequate to resolve the alleged claims of the Settlement Class Members, and that it is in the best interests of the Settlement Class Members to settle the claims raised in the Action under the terms and conditions set forth in this Settlement.

At all times, Lafayette has continued to deny all allegations of wrongdoing and has denied and continues to deny that it committed, or threatened or attempted to commit, any wrongful act or violation of law or duty alleged in the Action. Nevertheless, Lafayette decided to enter into this Settlement on the terms and conditions stated herein solely to avoid further expense, inconvenience, and burden, and the uncertainty and risks of litigation.

As more fully explained below, neither the Settlement nor any actions taken to carry out the Settlement are intended to be, nor may they be deemed or construed to be, an admission or

concession of liability by any person or entity, or of the validity of any claim, defense, or any point of fact or law by any Party. All such liability is expressly denied. Neither the Settlement, nor the fact of settlement, nor settlement proceedings, nor the Settlement Agreement, nor any related document, shall be used as an admission of any fault or liability by Lafayette, or be offered or received in evidence as an admission, concession, presumption, or inference of any wrongdoing by Lafayette in any action or proceeding.

Although the Parties have agreed that a class may be certified solely for purposes of the Settlement, such certification shall not be binding or have any legal effect if the Settlement is terminated, if the Settlement is ultimately not approved, or if the approval is reversed or modified on appeal. Lafayette reserves all of its objections to class certification for litigation purposes and does not consent to certification of the proposed Settlement Class for any purpose other than to effectuate the Settlement.

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED,** by and among the Parties, by and through their respective counsel, that subject to final approval of the Court, after a Final Approval Hearing as provided for in the Settlement pursuant to Federal Rule of Civil Procedure 23(e), and in consideration of the benefits flowing to the Parties from the Settlement set forth herein, the Action and the Released Claims shall be fully and finally compromised, settled, and released and the Action shall be dismissed with prejudice, upon and subject to the terms and conditions set forth in the Settlement.

## **DEFINITIONS**

1.       As used in this Stipulation of Settlement, the following terms have the meanings specified below:

(a)       **"Action"** means the above-captioned action.

4

(b)     **"Administrative Expenses"** means: (i) the costs, fees, and expenses that are incurred by the Settlement Administrator in connection with providing notice to the Settlement Class and administering the Settlement, including, but not limited to, distributing the Net Settlement Fund to the Settlement Class Members and maintaining the Settlement Website; (ii) fees and expenses incurred in connection with the Escrow Account; and (iii) Taxes.

(c)     **"Agreement"** means this agreement and all exhibits, which sets forth all material terms and conditions of the Settlement between the Parties.

(d)     **"Case Contribution Award"** means any payment from the Settlement Fund granted by the Court to the Settlement Class Representative.

(e)     **"Class Counsel"** means Nicholas A. Colella of Lynch Carpenter, LLP and Michael A. Tompkins and Anthony M. Alesandro of Leeds Brown Law, P.C.

(f)     **"Court"** means the United States District Court for the Eastern District of Pennsylvania, the Honorable John M. Gallagher presiding.

(g)     **"Effective Date"** means the first date after which all of the following events and conditions have been met or have occurred: (i) the Parties' counsel have executed the Settlement; (ii) the Court has entered the Preliminary Approval Order; (iii) the Court has entered the Final Judgment; and (iv) the Final Judgment becomes Final.

(h)     **"Election Form"** means the form to be emailed to Settlement Class Members and posted on the Settlement Website, which can be used by Class Members to provide an updated address and/or to elect to receive their Settlement Benefit by Venmo or PayPal rather than via paper check.

(i)     **"Escrow Account"** means the escrow account established by the Settlement Administrator to hold the Settlement Fund.

(j)     **"Escrow Agent"** means the Settlement Administrator.

(k)     **"Fee Award"** means the amount of attorneys' fees awarded by the Court to Class Counsel from the Settlement Fund.

(l)     **"Final"** (with respect to a judgment or any other court order) means: (i) if no appeal is taken, the expiration of the time to file a notice of appeal under the Federal Rules of Civil and/or Appellate Procedure; or (ii) if an appeal is taken from the judgment or order: (1) the date of decision on any such appeal and the expiration of the time period for any further appeal, or the final dismissal of any proceeding on certiorari or otherwise; or (2) the date the judgment or order is finally affirmed on an appeal, the expiration of the time to file a petition for a writ of certiorari or other form of review, or the denial of a writ of certiorari or other form of review, and, if certiorari or other form of review is granted, the date of final affirmance following review pursuant to that grant.

(m)     **"Final Approval Hearing"** means the hearing before the Court where (i) the Parties will request the Final Judgment approving the Settlement be entered by the Court, and (ii) the Court will determine the Fee Award, the Case Contribution Award, and reimbursement of any Litigation Expenses to Class Counsel.

(n)     **"Final Judgment"** means the final judgment and order to be entered by the Court approving the Settlement.

(o)     **"Lafayette"** means Lafayette College.

(p)     **"Lafayette's Counsel"** means Ballard Spahr LLP.

(q)     **"Litigation Expenses"** means costs and expenses incurred by Class Counsel in connection with commencing, prosecuting, and settling the Action.

(r)    **"Long Form Notice"** means the Long Form Notice of Class Action Settlement and Hearing, substantially in the form attached hereto as Exhibit A-2.

(s)    **"Net Settlement Fund"** means the Settlement Fund less any (i) Administrative Expenses, (ii) Fee Award, (iii) Litigation Expenses, and (iv) Case Contribution Award.

(t)    **"Non-Cash Benefit"** means five (5) complimentary tickets to regular season Lafayette basketball (men's or women's) or football games on Lafayette's campus to be used between July 1, 2026 and June 30, 2027, subject to the following conditions: (i) Settlement Class Members may request their complimentary tickets for specific games after Lafayette begins its sale of single-game tickets for the relevant season; (ii) complimentary tickets requested by Settlement Class Members will be issued only when available seating exists for a game (the location of which is subject to availability within the venue), and will not displace already-sold tickets; (iii) complimentary tickets cannot be sold or transferred for cash; and (iv) all games between Lafayette and Lehigh University are excluded.

(u)    The **"Objection/Exclusion Deadline"** is forty-five (45) days after the issuance of the Short Form Notice.

(v)    **"Potential Settlement Class"** means all Lafayette College students whose payment obligation of tuition and/or fees was satisfied for the Spring 2020 semester, and who were enrolled in at least one in-person on-campus class as of March 16, 2020. Excluded from the Potential Settlement Class are all Lafayette College students who received scholarships, grants, or credits that equaled or exceeded their total payment obligations to Lafayette for the Spring 2020 semester, or who were otherwise not obligated to make contributions, payments or third-party arrangements towards tuition or fees for the Spring 2020 semester.

7

(w)     **"Potential Settlement Class Member"** means a person who falls within the definition of the Potential Settlement Class as set forth above in Paragraph 1(v).

(x)     **"Preliminary Approval Order"** means an order granting preliminary approval of the Settlement, substantially in the form attached hereto as Exhibit A.

(y)     **"Released Claims"** means any and all suits, claims, controversies, rights, agreements, promises, debts, liabilities, accounts, reckonings, demands, damages, judgments, obligations, covenants, contracts, costs (including, without limitation, attorneys' fees and costs), losses, expenses, actions or causes of action of every nature, character, and description, in law, contract, tort or in equity, that any Releasing Party ever had, or has, or may have in the future, upon or by reason of any matter, cause, or thing whatever from the beginning of the world to the Effective Date, arising out of, concerning, or relating in any way to Lafayette's transition to or provision of remote education with respect to the COVID-19 pandemic, or the implementation or administration of such remote education, the closing of its campus due to the COVID-19 pandemic or the provision of any services whatsoever that were altered in connection with the COVID-19 pandemic during the Spring 2020 semester. This definition includes, but is not limited to, all claims that were brought or could have been brought in the Action.

(z)     **"Released Lafayette Parties"** means Lafayette and all of its present, future, and former parent, subsidiary, and affiliated corporations and entities, the predecessors and successors in interest of any of them, and each of the foregoing's respective present, future, and former officers, directors, trustees, academic affiliates, employees, faculty members, students, agents, representatives, attorneys, outside counsel, insurers, predecessors, successors, and assigns.

(aa)     **"Released Parties"** means each and any of the Released Lafayette Parties.

8

(bb)    **"Releasing Parties"** means each and any of the Releasing Settlement Class Parties.

(cc)    **"Releasing Settlement Class Parties"** means the Settlement Class Representative, Class Counsel, and all other Settlement Class Members, and each of their respective present and former heirs, family members, guardians, executors, administrators, employees, agents, representatives, attorneys, outside counsel, predecessors, successors, assigns, and any person who has made payments to Lafayette on their behalf or could otherwise bring a claim by, through or with them.

(dd)    **"Settlement Administrator"** means RG/2 Claims Administration.

(ee)    **"Settlement Amount"** means the $456,750.00 consideration to be paid by Lafayette.

(ff)    **"Settlement Benefit"** means each Settlement Class Member's share of the Net Settlement Fund.

(gg)    **"Settlement Class"** means all Potential Settlement Class Members, with the exception of any person who properly executes and files a timely opt-out request to be excluded from the Settlement Class.

(hh)    **"Settlement Class Member"** means a person who falls within the definition of the Settlement Class as set forth above in Paragraph 1(gg).

(ii)    **"Settlement Class Representative"** means Named Plaintiff Julia Jin-Wolfson.

(jj)    **"Settlement Fund"** means the Settlement Amount plus any and all interest earned thereon.

9

(kk)    **"Settlement Website"** means the website established by the Settlement Administrator to aid in administering the Settlement.

(ll)    **"Short Form Notice"** means the Short Form Notice of Class Action Settlement and Hearing, as provided for in Paragraphs 19-20, and substantially in the form attached hereto as Exhibit A-1.

(mm)    **"Taxes"** means (i) all federal, state and/or local taxes of any kind (including any interest or penalties thereon) on any income earned by the Settlement Fund; (ii) the reasonable expenses and costs incurred in connection with determining the amount of, and paying, any taxes owed by the Settlement Fund (including, without limitation, the reasonable expenses of tax attorneys and accountants); and (iii) all taxes imposed on payments by the Settlement Fund, including withholding taxes.

(nn)    **"Uncashed Settlement Checks"** means any checks sent to Settlement Class Members that remain uncashed after a period of one hundred and eighty (180) days from the date of distribution of the checks to Settlement Class Members.

2.    The word "or" means "and/or."

3.    The plural includes the singular and vice versa.

## RELIEF TO SETTLEMENT CLASS MEMBERS

*Monetary Relief*

4.    The Net Settlement Fund will be distributed equally to each Settlement Class Member.

5.    Potential Settlement Class Members who properly execute and file a timely opt-out request to be excluded from the Settlement Class will not be entitled to receive any of the Net Settlement Fund.

10

6.       Each Settlement Class Member's Settlement Benefit will be distributed to that Settlement Class Member automatically, with no action required by that Settlement Class Member.

7.       By default, the Settlement Administrator will send the Settlement Benefit to each Settlement Class Member by check mailed to the Settlement Class Member's last known permanent mailing address on file with the College. The Settlement Administrator will also provide an Election Form via email and through the Settlement Website that Settlement Class Members may use to (a) provide an updated address for sending a check; or (b) elect to receive the Settlement Benefit by Venmo or PayPal instead of via a mailed paper check. Settlement Class Members must submit a completed Election Form no later than forty-five (45) days after the Effective Date.

8.       No later than ten (10) days after the Effective Date, Lafayette will produce to the Settlement Administrator any additional information reasonably necessary for the Settlement Administrator to send the Settlement Benefits to the Settlement Class Members.[1]

9.       The Settlement Administrator will send the Settlement Benefits to Settlement Class Members within sixty (60) days after the Effective Date. Funds for Uncashed Settlement Checks shall, subject to Court approval, be designated to scholarships for Lafayette students.

---

[1]     Consistent with the requirements of the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g, and associated regulations, 34 C.F.R. Part 99 (collectively, "FERPA"), Lafayette may disclose directory information to the Settlement Administrator. *See* 34 C.F.R. § 99.37. Moreover, any order granting preliminary or final approval of the Settlement shall constitute a judicial order permitting disclosure of information necessary to effectuate this settlement within the meaning of FERPA, *see* 34 C.F.R. § 99.31(a)(9)(i), and the Settlement and the Court's order shall constitute specific notice of Lafayette's intention to comply with that order, *see* 34 C.F.R. § 99.31(a)(9)(ii).

*Non-Monetary Relief*

10.     All Settlement Class Members, in addition to the Settlement Benefit, will receive the Non-Cash Benefit. The Settlement Administrator will provide instructions on how to redeem the Non-Cash Benefit via email and through the Settlement Website.

11.     Potential Settlement Class Members who properly execute and file a timely opt-out request to be excluded from the Settlement Class will not be entitled to receive any Non-Cash Benefit.

## **RELEASE**

12.     The Releasing Settlement Class Parties shall be deemed to have, and by operation of law and of the Final Judgment shall have, fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, and discharged all Released Claims against the Released Lafayette Parties, and shall forever be barred and enjoined from prosecuting any or all of the Released Claims against any of the Released Lafayette Parties.

13.     The Released Claims include any unknown claims that reasonably could have arisen out of the same facts alleged in the Action that the Releasing Parties do not know or suspect to exist in their favor at the time of the release, which, if known by them, might have affected their decision to agree to the Settlement, their decision to release the Released Claims, or their decision not to object to the Settlement.

14.     With respect to the Released Claims, the Releasing Parties stipulate and agree that, upon the Effective Date, they shall be deemed to have, and by operation of the Final Judgment shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits of Section 1542 of the California Civil Code, or any other similar

provision under federal or state law in the States of Texas, North Carolina, or any other jurisdiction.

Section 1542 provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR THE RELEASING PARTY.

15.     The Releasing Parties may hereafter discover facts in addition to or different from those they now know or believe to be true with respect to the subject matter of the Released Claims, but upon the Effective Date, shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally, and forever settled and released any and all of the Released Claims, whether known or unknown, suspected or unsuspected, contingent or non-contingent, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, for damages, injunctive relief, rescission, disgorgement, or restitution or any other right, remedy, or relief of every nature and description whatsoever, whether based on federal, state local, statutory, or common law or any other law, rule, or regulation, including the law of any jurisdiction outside the United States, that were brought or could have been brought in the complaint in this Action without regard to subsequent discovery or the existence of different or additional facts.

16.     The Releasing Settlement Class Parties agree not to commence any legal or administrative action against any Released Lafayette Party with respect to any Released Claim, or otherwise assist others in doing so, and agree to be forever barred from doing so, in any court of law, equity, or any other forum.

**CAFA NOTICE**

17.     The Settlement Administrator, after approval by Lafayette, shall provide the notice required under the Class Action Fairness Act, 28 U.S.C. § 1715(b) ("CAFA") no later than ten (10) days following the filing of the Settlement with the Court.

**CLASS NOTICE**

18.     Within thirty (30) days of the entry of the Preliminary Approval Order, Lafayette will produce to the Settlement Administrator a list that includes the names and last known personal email and permanent postal addresses, to the extent available, belonging to all Potential Settlement Class Members (the "Class List"). Lafayette is not required to provide any additional information or conduct any further research other than providing the information identified in the preceding sentence. The Class List will be provided to the Settlement Administrator for the sole purpose of the Settlement Administrator performing its obligations pursuant to the Settlement and shall not be used for any other purpose at any time.

19.     Following the entry of the Preliminary Approval Order, the Settlement Administrator shall send the Short Form Notice substantially in the form attached hereto as Exhibit A-1 via email to persons listed on the Class List. If an email address is not available for a Potential Settlement Class Member, the Short Form Notice will be sent to the Potential Settlement Class Member's last known mailing address via U.S. mail. Unless adjusted by Court order, the sending or mailing of the Short Form Notice shall be completed within forty-five (45) days after the entry of the Preliminary Approval Order.

20.     The Short Form Notice shall advise the Potential Settlement Class Members of their rights under the Settlement, including the right to be excluded from and/or object to the Settlement or its terms.  The Short Form Notice shall also inform Potential Settlement Class Members that

14

they can access the Long Form Notice on the Settlement Website, which Long Form Notice shall advise the Potential Settlement Class Members of the procedures outlined in Paragraphs 23-30, specifying how to request exclusion from the Settlement or submit an objection to the Settlement.

21.     No later than forty-five (45) days after the entry of the Preliminary Approval Order, and before the issuance of the Short Form Notice, the Settlement Administrator shall establish the Settlement Website. The Settlement Website will include an Election Form that will allow Settlement Class Members to provide an updated mailing address to receive a paper check, or to elect to receive their Settlement Benefit via Venmo or PayPal. The Settlement Website shall include, in downloadable format, the following: (i) the Long Form Notice; (ii) the memorandum in support of the motion for preliminary approval of the Settlement and the Preliminary Approval Order; (iii) the Settlement (including all of its exhibits); (iv) the Election Form; (v) the memoranda in support of the motion for final approval of the Settlement and the motion for attorneys' fees; and (vi) any other materials agreed upon by the Parties and/or required by the Court.

22.     Prior to the Final Approval Hearing, in connection with the motion for final approval of the Settlement, Class Counsel shall serve and file a sworn statement from the Settlement Administrator evidencing compliance with the provisions of the Preliminary Approval Order concerning the distribution of the Short Form Notice to the Settlement Class.

## REQUESTS FOR EXCLUSION

23.     A Potential Settlement Class Member may request to be excluded from the Settlement Class by sending a written request for exclusion to the Settlement Administrator, in care of the address provided in the Short Form Notice and Long Form Notice, postmarked no later than forty-five (45) days after the issuance of the Short Form Notice (the "Objection/Exclusion Deadline"), which date shall be included in the Short Form Notice.

15

24.    The written request for exclusion must:

(a)    include a statement requesting exclusion from the Settlement Class;

(b)    be personally signed by the Potential Settlement Class Member; and

(c)    include the Potential Settlement Class Member's name, address, telephone number, email address, and the caption for the Action.

25.    A request to be excluded from the Settlement Class that does not include all of the foregoing information in Paragraph 24, that is sent to an address other than that designated in the Long Form Notice, or that is not postmarked and received within the time specified, shall be invalid, and any individual sending such request shall be deemed to remain in the Settlement Class and shall be bound as a Settlement Class Member by the Settlement, if approved by the Court. Any Potential Settlement Class Member who properly elects to be excluded, in compliance with the requirements set forth in Paragraphs 23-24, shall not: (a) be bound by any orders of the Court or the Final Judgment; (b) be entitled to relief under the Settlement; (c) gain any rights by virtue of the Settlement; or (d) be permitted to object to any aspect of the Settlement.

26.    A request to be excluded from the Settlement Class must be personal. No person or entity other than a particular Potential Settlement Class Member may opt that Potential Settlement Class Member out of the Settlement Class, including on a class or representative basis.

27.    Lafayette has the right to audit the exclusion process for evidence of fraud or error, and the Court will be the final arbiter of an exclusion's validity.

## OBJECTIONS BY SETTLEMENT CLASS MEMBERS

28.    Any Settlement Class Member may file a written objection to the Settlement, the Case Contribution Award, the Fee Award, and/or reimbursement of Litigation Expenses. The Settlement Class Member must file the written objection(s) with the Clerk of Court, or via the

Court's electronic case filing system if the objection(s) are from a Settlement Class Member represented by counsel, such that they are postmarked and received no later than the Objection/Exclusion Deadline. Copies must also be sent at the same time via mail, hand, or overnight delivery service to Class Counsel and Lafayette's Counsel at the addresses set forth below in Paragraph 76.

29.     The written objection(s) must:

(a)     state that the person objecting is a Settlement Class Member;

(b)     include the name, address, email, and telephone number of the Settlement Class Member objecting;

(c)     be personally signed by the objecting Settlement Class Member;

(d)     contain a statement that includes all objections, provides whether each objection applies only to the objector, to a subset of the Settlement Class, or to the entire Settlement Class, and provides the specific reasons for all objections, including any legal arguments and evidentiary support (including copies of any documents relied upon); and

(e)     include a statement of whether the objector intends to appear at the Final Approval Hearing, with or without counsel.

30.     Any Settlement Class Member who fails to timely file a written objection with the Court and/or timely file notice of their intent to appear at the Final Approval Hearing in accordance with the terms of Paragraphs 28-29 and as detailed in the Long Form Notice, with copies to designated counsel for each of the Parties, shall not be permitted to object to the Settlement, the Case Contribution Award, the Fee Award, and/or reimbursement of Litigation Expenses at the Final Approval Hearing; shall be foreclosed from seeking any review of the Settlement, the Case Contribution Award, and/or the Fee Award by appeal or other means; and shall be deemed to have

17

waived their objection(s) and be forever barred from making any such objection(s) in the Action or any other related action or proceeding.

## SETTLEMENT ADMINISTRATION

31.     The Settlement Administrator shall administer the Settlement and shall act under Class Counsel's supervision and subject to the jurisdiction of the Court. Class Counsel shall be responsible for supervising the administration of the Settlement and the disbursement of the Net Settlement Fund, subject to Court approval.  Lafayette's Counsel shall have the right to approve the Settlement Administrator and shall have the right to receive access to information directly from the Settlement Administrator.

32.     The Settlement Administrator shall:

(a)     send Short Form Notice to the Potential Settlement Class Members and CAFA Notice, as described in Paragraphs 17 and 19;

(b)     establish the Settlement Website, as described in Paragraph 21;

(c)     serve as Escrow Agent for the Settlement Fund;

(d)     forward to Class Counsel promptly upon receipt, with copies to Lafayette's Counsel, all documents and other materials received in connection with the administration of the Settlement;

(e)     receive requests for exclusion and other requests from the Potential Settlement Class Members and provide a copy of such requests to Class Counsel and Lafayette's Counsel promptly upon receipt, including any requests received after the Objection/Exclusion Deadline;

(f)     provide (at least) weekly reports to Class Counsel and Lafayette's Counsel, including, without limitation, reports regarding any requests for exclusion received;

18

(g)     make available for inspection by Class Counsel and Lafayette's Counsel any documentation related to the Settlement submitted to the Settlement Administrator, and any correspondence related to the Settlement sent or received by the Settlement Administrator, at any time upon reasonable notice;

(h)     provide reports and other information to the Court as the Court may require;

(i)     undertake other administrative tasks in a rational, responsive, cost effective, and timely manner; and

(j)     file with the Court at least ten (10) days before the Final Approval Hearing a listing of all Potential Settlement Class Members who have opted out of the Settlement Class, and all Class Members' objections to the Settlement or to the request for attorneys' fees by Class Counsel.

33.     The Settlement Administrator shall keep the Class List and all personal information, including the identity and mailing addresses of the Potential Settlement Class Members, confidential. The Parties agree that this information may not be used for any purpose other than effectuating the terms of the Settlement or the duties or obligations arising hereunder.

34.     The Settlement Administrator shall maintain reasonably detailed records of its activities under the Settlement, including all such records as are required by applicable law, in accordance with its normal business practices, which will be made available to Class Counsel and Lafayette's Counsel upon request. Should the Court request, the Parties, in conjunction with the Settlement Administrator, shall submit a timely report to the Court summarizing the work performed by the Settlement Administrator.

## PRELIMINARY APPROVAL ORDER AND FINAL APPROVAL ORDER

35.     No later than March 21, 2025, in coordination with Lafayette's Counsel, Class Counsel will move for preliminary approval of the Settlement, provisional certification of the Settlement Class for settlement purposes only, appointment of Named Plaintiff as Settlement Class Representative, appointment of Class Counsel as counsel for the Settlement Class, and the scheduling of the Final Approval Hearing. Class Counsel shall provide Lafayette's Counsel with a draft of the Motion for Preliminary Approval and supporting Memorandum of Law at least seven (7) days in advance of filing for Lafayette's review and comments.  Concurrently with the motion for preliminary approval, Class Counsel shall apply to the Court for, and Lafayette shall agree to, entry of the proposed Preliminary Approval Order, substantially in the form attached hereto as Exhibit A.

36.     At the time of the submission of the Settlement to the Court as described above, Class Counsel shall request that the Court hold a Final Approval Hearing, which shall be held no less than seventy-five (75) days after the Short Form Notice is disseminated.

37.     After the Short Form Notice is disseminated, and no later than ten (10) days before the Final Approval Hearing, Class Counsel, in coordination with Lafayette's Counsel, shall move for final approval of the Settlement and request and seek to obtain from the Court a Final Judgment which will, among other things:

(a)     approve the Settlement as fair, reasonable, and adequate to the Settlement Class within the meaning of Rule 23 of the Federal Rules of Civil Procedure, and direct consummation of the Settlement in accordance with the terms and provisions of the Settlement;

(b)     fully and finally dismiss the Action with prejudice, and without costs (except as may be provided herein) to any Party as against any other;

(c)    incorporate the releases set forth above in Paragraphs 1(y) and 12-16, make the releases effective as of the Effective Date, and forever discharge the Released Parties as set forth herein;

(d)    approve the manner of distribution of the Net Settlement Fund and order that payments be made to Settlement Class Members only in accordance with same;

(e)    award Class Counsel from out of the Settlement Fund such Fee Award and reimbursement of Litigation Expenses as the Court may allow;

(f)    award the Settlement Class Representative from out of the Settlement Fund such Case Contribution Award as the Court may allow; and

(g)    reserve jurisdiction over: (i) implementation of the Settlement and any distribution to Settlement Class Members, pursuant to further orders of the Court; (ii) disposition of the Settlement Fund; (iii) the Action, until each and every act agreed to be performed pursuant to the Settlement shall have been performed, pursuant to further orders of the Court; and (iv) the Parties, for the purpose of enforcing and administering the Settlement.

38.    Class Counsel shall provide Lafayette's Counsel with a draft of the Motion for Final Approval and supporting Memorandum of Law at least seven (7) days in advance of filing for Lafayette's review and comment.

## <u>MONETARY SETTLEMENT CONSIDERATION</u>

39.    The Settlement Amount shall be the sum of $456,750. Within thirty (30) days after the Court enters the Preliminary Approval Order, Lafayette shall deposit into an escrow account established by the Settlement Administrator / Escrow Agent (the "Escrow Account") the sum of $456,750.00. No person or entity shall be liable to pay any amount pursuant to the Settlement except as set forth in this paragraph.

21

## USE OF SETTLEMENT FUND

40.     The Settlement Fund shall be used to pay: (a) any Administrative Expenses incurred in accordance with Paragraph 1(b); (b) any Fee Award and/or reimbursement of Litigation Expenses granted by the Court; and (c) any Case Contribution Award granted by the Court. The remaining funds (the Net Settlement Fund) shall be distributed to Settlement Class Members according to the Settlement.

41.     The Settlement Fund shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the entirety of the Settlement Fund is distributed as provided in Paragraphs 4-9.

42.     Up until the Effective Date, the Escrow Account shall be under the control of the Escrow Agent, on behalf of the Settlement Class Representative, the Settlement Class, and Lafayette. The Escrow Agent shall cause the Settlement Fund to be invested exclusively in United States Treasury Bills (or a mutual fund invested solely in such instruments), except that any cash balances up to the amount that is insured by the FDIC may be deposited in any account that is fully insured by the FDIC. The Escrow Agent shall cause all interest on the Escrow Account to be collected and reinvested. In the event that the yield on United States Treasury Bills is negative, in lieu of purchasing such Treasury Bills, all or any portion of the funds held by the Escrow Agent may be deposited in any account that is fully insured by the FDIC or backed by the full faith and credit of the United States. Additionally, if short-term placement of the funds is necessary, all or any portion of the funds held by the Escrow Agent may be deposited in any account that is fully insured by the FDIC or backed by the full faith and credit of the United States. The Released Lafayette Parties shall have no responsibility for, interest in, or liability whatsoever with respect

to investment decisions executed by the Escrow Agent. All risks related to the investment of the Settlement Fund shall be borne solely by the Settlement Fund.

43.    The Settlement Fund is intended to be a Qualified Settlement Fund within the meaning of Treasury Regulation § 1.468B-1. The Settlement Administrator, as administrator of the Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall be solely responsible for filing or causing to be filed all informational and other tax returns as may be necessary or appropriate (including, without limitation, the returns described in Treasury Regulation § 1.468B-2(k)) for the Settlement Fund. The Settlement Administrator shall also be responsible for causing payment to be made from the Settlement Fund of any Taxes owed with respect to the Settlement Fund. The Released Lafayette Parties shall not have any liability or responsibility for any such Taxes. Upon written request, Lafayette will provide to the Settlement Administrator the statement described in Treasury Regulation § 1.468B-3(e). The Settlement Administrator, as administrator of the Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall timely make such elections as are necessary or advisable to carry out this paragraph, including, as necessary, making a "relation back election," as described in Treasury Regulation § 1.468B-1(j), to cause the Qualified Settlement Fund to come into existence at the earliest allowable date, and shall take or cause to be taken all actions as may be necessary or appropriate in connection therewith.

44.    All Taxes shall be paid out of the Settlement Fund and shall be timely paid pursuant to the disbursement instructions to be set forth in the Escrow Agreement, and without further order of the Court. Any tax returns prepared for the Settlement Fund (as well as the election set forth therein) shall be consistent with the previous paragraph and in all events shall reflect that all Taxes on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided

herein. The Released Lafayette Parties shall have no responsibility or liability for the acts or omissions of the Settlement Administrator with respect to the payment of Taxes.

45.     This Settlement is not a claims-made settlement. As of the Effective Date, all rights of Lafayette in or to the Settlement Fund shall be extinguished.

46.     Prior to the Effective Date, no disbursements shall be made out of the Settlement Fund except: (a) upon order of the Court; or (b) as provided in the Settlement. Prior to the Effective Date, the Escrow Agent may pay from the Settlement Fund Administrative Expenses actually incurred and paid or payable, which shall not exceed $50,000. If, prior to the Effective Date, Administrative Expenses exceed $50,000, such additional amounts shall be paid only after approval by both Class Counsel and Lafayette's Counsel, which shall not be unreasonably withheld. After the Effective Date, the Escrow Agent may pay from the Settlement Fund any additional, unpaid Administrative Expenses only after approval by both Class Counsel and Lafayette's Counsel. The Released Lafayette Parties are not responsible for, and shall not be liable for, any Administrative Expenses.

47.     If the Effective Date does not occur, or if the Settlement is voided, terminated, or cancelled pursuant to the terms of the Settlement, the Settlement Class Representative and Class Counsel shall have no obligation to repay any of the Administrative Expenses that have been paid or incurred in accordance with Paragraph 1(b). Any amounts remaining in the Settlement Fund after payment of Administrative Expenses incurred in accordance with Paragraph 1(b), including all interest earned on the Settlement Fund net of any Taxes, shall be returned to Lafayette. No other person or entity shall have any further claim whatsoever to such amounts.

48.     The Net Settlement Fund will be distributed in the manner set forth in Paragraphs 4-9. The manner of distribution of the Net Settlement Fund, as described in Paragraphs 4-8, the

treatment of Uncashed Settlement Checks, as described in Paragraph 9, and the identity of the Settlement Administrator, as described in Paragraph 1(dd), are not necessary terms of the Settlement, and it is not a condition of the Settlement that any particular manner of distribution of the Net Settlement Fund be approved by the Court. The Settlement Class Representative and Class Counsel may not cancel or terminate the Settlement based on the Court's or any appellate court's ruling with respect to the manner of distribution of the Net Settlement Fund or any other plan of distribution in this Action. Any order or proceeding relating to the manner of distribution of the Net Settlement Fund or any other plan of distribution in this Action, or any appeal from any such order, shall not operate to terminate or cancel the Settlement.

49.     Payment pursuant to the Final Judgment shall be final and conclusive against all Settlement Class Members. All Settlement Class Members shall be bound by all terms of the Settlement, including the Final Judgment to be entered in this Action, and will be permanently barred and enjoined from bringing any action against the Released Lafayette Parties with respect to any and all of the Released Claims.

50.     No person or entity shall have any claim or cause of action against the Settlement Class Representative, Class Counsel, the Settlement Administrator, or any other agent designated by Class Counsel arising from distributions made substantially in accordance with the Settlement, the manner of distribution of the Net Settlement Fund as approved by the Court, or any order of the Court.

51.     The Released Lafayette Parties shall have no responsibility for, interest in, or liability whatsoever with respect to distribution of the Net Settlement Fund, the payment or withholding of Taxes, the Escrow Account, the Escrow Agent, the Settlement Administrator, Administrative Expenses, or any losses incurred in connection with the foregoing. No person,

including the Settlement Class Representative, Settlement Class Members, and Class Counsel, shall have any claim of any kind against the Released Lafayette Parties with respect to the matters set forth in this paragraph.

## **AWARDS FOR ATTORNEYS' FEES AND SETTLEMENT CLASS REPRESENTATIVE**

52.     Settlement Class Representative may seek, and the Court may award, a reasonable Case Contribution Award to her for her service in the case not to exceed Seven Thousand Five Hundred Dollars ($7,500), which shall come from the Settlement Fund. This shall be in addition to any Settlement Benefit that Settlement Class Representative may receive as a Settlement Class Member. If the Court approves a request for a Case Contribution Award, the Settlement Administrator will distribute the Case Contribution Award to the Settlement Class Representative along with her Settlement Benefit no later than sixty (60) days after the Effective Date.

53.     No later than fourteen (14) days prior to the Objection/Exclusion Deadline, Class Counsel will apply to the Court for a Fee Award to Class Counsel to be paid from (and out of) the Settlement Fund and not to exceed one-third (33.33%) of the Settlement Fund. In addition to the Fee Award, Class Counsel also will apply to the Court for reimbursement of their Litigation Expenses, which may include a request for reimbursement of the Settlement Class Representative's costs and expenses directly related to her representation of the Settlement Class, to be paid from (and out of) the Settlement Fund.

54.     Any Fee Award and reimbursement of Litigation Expenses shall be paid to Class Counsel from out of the Settlement Fund within ten (10) days of the Effective Date.

55.     The granting by the Court of any Case Contribution Award, Fee Award, or reimbursement of Litigation Expenses is not a necessary term of the Settlement, and it is not a condition of the Settlement that any particular Case Contribution Award, Fee Award, or

reimbursement of Litigation Expenses be approved by the Court. The Settlement Class Representative and Class Counsel may not cancel or terminate the Settlement based on this Court's or any appellate court's ruling with respect to any Case Contribution Award, Fee Award, or Litigation Expenses. Any order or proceeding relating to any Case Contribution Award, Fee Award, or Litigation Expenses, or any appeal from any such order, shall not operate to terminate or cancel the Settlement. However, distribution of all or a portion of the Settlement Fund may be delayed in the event of an appeal concerning any Case Contribution Award, Fee Award or Litigation Expenses.

## NO ADMISSION OF WRONGDOING

56.     Neither the Settlement, nor any document referred to herein, nor any action taken to carry out the Settlement, is, may be construed as, or may be used as an admission by or against Lafayette of any fault, wrongdoing, or liability whatsoever, and Lafayette has denied all such liability.

57.     Pursuant to Federal Rule of Evidence 408, entering into or carrying out the Settlement, the exhibits hereto, and any negotiations or proceedings related thereto, shall not in any event be construed as, or deemed to be evidence of, an admission or concession by Lafayette, and shall not be offered or received into evidence in any action or proceeding against the Released Lafayette Parties in any court or before any administrative agency or other tribunal for any purpose whatsoever, other than to enforce the provisions of the Settlement or the provisions of any related agreement or exhibit hereto.

## TERMINATION OF SETTLEMENT

58.     Lafayette or the Class Representative on behalf of the Settlement Class shall have the right to terminate this Agreement by providing written notice of the election to do so

27

("Termination Notice") to all other Parties hereto within twenty-one (21) days of any of the following events: (i) the Court's refusal to grant Preliminary Approval of this Agreement in any material respect; (ii) the Court's refusal to grant final approval of this Agreement in any material respect; (iii) the Court's refusal to enter the Final Judgment in this Action in any material respect; (iv) the date upon which the Final Judgment is modified or reversed in any material respect by the Court of Appeals or the Supreme Court; or (v) the date upon which an alternate judgment is modified or reversed in any material respect by the Court of Appeals or the Supreme Court.

59.    The Parties agree that, if the number of persons who properly execute and file a timely request for exclusion from the Settlement reaches five (5) percent of the Potential Settlement Class Members, Lafayette has the unilateral right, in its sole discretion, to declare the Settlement void in its entirety upon notice to Class Counsel.

(a)    If Lafayette intends to exercise its unilateral right of termination set forth herein, written notice of such intent must be provided to Class Counsel at least fourteen (14) days prior to the Final Approval Hearing.  Within seven (7) days of such notice, Class Counsel and Lafayette's Counsel shall meet and confer concerning the potential termination of the Settlement.

(b)    Following the meet and confer, and at least three (3) days prior to the Final Approval Hearing, Lafayette shall provide Class Counsel with written notice that Lafayette is exercising its unilateral right of termination set forth herein. Lafayette may withdraw its termination by providing written notice of such withdrawal to Class Counsel no later than one (1) business day prior to the scheduled Final Approval Hearing.

(c)    If Lafayette elects to terminate the Settlement in accordance with the terms set forth herein, the Settlement shall be deemed terminated and cancelled and the provisions of

Paragraph 59 shall apply, and Lafayette shall be responsible for the costs of the Claims Administrator to date including the costs of effectuating notice.

60.      If (i) Lafayette exercises its right to terminate the Settlement as provided in Paragraph 58; (ii) the Court disapproves the Settlement; or (iii) the Effective Date as to the Settlement otherwise fails to occur, then:

(a)      The Settlement shall be cancelled and terminated;

(b)      The terms and provisions of the Settlement shall have no further force and effect whatsoever;

(c)      Within ten (10) business days after written notice is sent by Lafayette or its counsel to the Escrow Agent and Class Counsel, the Escrow Agent shall cause the Settlement Fund and all interest earned thereon (subject to the expiration of any time deposit not to exceed ninety (90) days) to be refunded to Lafayette, less any Administrative Expenses paid or incurred in accordance with the terms of the Settlement; and

(d)      The Parties shall be deemed to have reverted to their respective statuses as of the date and time immediately prior to the execution of the Settlement, and they shall proceed in all respects as if the Settlement, its exhibits, and any related agreements or orders, had never been executed.  In such event, the Parties jointly will seek to vacate any orders entered or actions taken in connection with the Settlement, including the order certifying the Settlement Class.

## <u>MISCELLANEOUS PROVISIONS</u>

61.      Class Counsel, on behalf of the Settlement Class, are authorized to take all appropriate actions required or permitted to be taken by the Settlement Class pursuant to the Settlement to effectuate its terms. Class Counsel also are authorized to enter into any modifications

or amendments to the Settlement on behalf of the Settlement Class which such counsel deem appropriate.

62.     All of the exhibits attached hereto are hereby incorporated by this reference as though fully set forth herein. Notwithstanding the foregoing, in the event that there exists a conflict or inconsistency between the terms of the Settlement and the terms of any exhibit attached hereto, the terms of the Settlement shall prevail.

63.     The Settlement may be amended or modified only by a written instrument signed by or on behalf of the Settlement Class Representative and Lafayette or their successors-in-interest, except to the extent that any modification would be inconsistent with any order by the Court.

64.     The waiver by one Party of any breach of the Settlement by any other Party shall not be deemed a waiver, by that Party or by any other Party to the Settlement, of any other prior or subsequent breach of the Settlement.

65.     The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

66.     This Agreement is deemed to have been prepared by counsel for all Parties, as a result of arm's-length negotiations among the Parties. Because all Parties have contributed substantially and materially to the preparation of this Agreement, it shall not be construed more strictly against one Party than another.

67.     The Settlement and its exhibits constitute the entire agreement among the Parties hereto, and no other agreements, representations, warranties, or inducements have been made to any Party concerning the Settlement or its exhibits other than those contained and memorialized in such documents.

68.     The Settlement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. Counsel for the Parties shall exchange among themselves signed counterparts. Signatures may be originals, or facsimile or PDF copies.

69.     The Settlement shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties to the Settlement. Named Plaintiff represents and warrants that she has not assigned any claim against Lafayette to any other person or entity and is fully authorized and entitled to enter into this Agreement.

70.     The construction, interpretation, operation, effect, and validity of the Settlement and the exhibits hereto shall be governed by and interpreted according to the laws of the Commonwealth of Pennsylvania, without regard to conflicts of laws, except to the extent federal law requires that federal law govern.

71.     The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of this Agreement, and all Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in this Agreement.

72.     Any action arising under or to enforce the Settlement or any portion thereof shall be commenced and maintained only in this Court. Any disputes between the Parties or between Settlement Class Members and Lafayette concerning the Settlement shall be submitted to the Honorable Thomas J. Rueter (Ret.) for resolution.

73.     All persons involved in the Settlement will be required to keep confidential any personal identifying information of Settlement Class Members, and any otherwise nonpublic financial information of Lafayette. Any documents or nonpublic information provided by Lafayette to Class Counsel must be destroyed within 30 days of the Settlement Administrator

completing the issuance of all settlement payments, except insofar as Class Counsel shall have the right to retain any work product and, in the case of pleadings submitted to the Court, any exhibits to such pleadings.

74.    Lafayette may communicate with Settlement Class Members in the ordinary course of its operations. Lafayette will refer inquiries regarding this Agreement and administration of the Settlement to the Settlement Administrator or Class Counsel.

75.    The Parties and their counsel agree to use their best efforts, and to take all reasonable steps necessary, to obtain the entry of the Final Judgment, and to effectuate the Settlement. Any such actions taken by the Parties, and any actions taken by the Parties to comply with the Settlement, will be in accordance with federal, state, and/or local law, including but not limited to the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g, and associated regulations, 34 C.F.R. Part 99.

76.    If any Party is required to give notice to another Party under the Settlement, such notice shall be in writing and shall be deemed to have been duly given upon receipt of hand delivery or email transmission, with confirmation of receipt. Notice shall be provided as follows:

If to the Settlement Class
Representative or Class Counsel:

**LYNCH CARPENTER, LLP**
Attn: Nicholas A. Colella
1133 Penn Ave., Floor 5
Pittsburgh, PA 15222
Telephone: (412) 322-9243
Email: nickc@lcllp.com

**LEEDS BROWN LAW, P.C.**
Attn: Anthony Alesandro
One Old Country Road, Suite 347
Carle Place, NY 11514
Telephone: (516) 873-9550
Email: aalesandro@leedsbrownlaw.com

If to Lafayette:

**BALLARD SPAHR LLP**
Attn: Marcel S. Pratt
1735 Market Street, 51st Floor
Philadelphia, PA 19103
prattm@ballardspahr.com
Telephone: (215) 864-8506
Email: prattm@ballardspahr.com

77.    The Parties intend the Settlement to be a final and complete resolution of all disputes asserted or which could be asserted by the Settlement Class Representative, and any other Settlement Class Members, against the Released Lafayette Parties with respect to the Released Claims. Accordingly, Settlement Class Representative and her counsel, and Lafayette and its counsel, agree not to assert in any forum that this Action was brought or defended in bad faith or without a reasonable basis. The Parties agree that the amounts paid and the other terms of the Settlement were negotiated at arm's length and in good faith by the Parties, and reflect a Settlement that was reached voluntarily after extensive negotiations and consultation with experienced legal counsel, who were fully competent to assess the strengths and weaknesses of their respective clients' claims or defenses.

**IN WITNESS WHEREOF**, the Parties hereto have caused this Settlement to be executed, by their duly authorized attorneys, as of the date stated above.

Dated: March 21, 2025                    **LYNCH CARPENTER, LLP**

By: */s/ Nicholas A. Colella*
Nicholas A. Colella
1133 Penn Ave., Floor 5
Pittsburgh, PA 15222
nickc@lcllp.com

Dated: March 21, 2025                    **LEEDS BROWN LAW, P.C.**

By: */s/ Anthony Alesandro*
Michael Tompkins
Anthony Alesandro
One Old Country Road, Suite 347
Carle Place, NY 11514
aalesandro@leedsbrownlaw.com

*Attorneys for the Named Plaintiff and the Putative Class*

Dated: March 21, 2025                    **BALLARD SPAHR LLP**

By: */s/ Marcel S. Pratt*
Marcel S. Pratt
1735 Market Street, 51st Floor
Philadelphia, PA 19103
prattm@ballardspahr.com

*Attorney for Lafayette College*

Dated: _____03/21/2025_____    _____
Julia Jin-Wolfson

*Named Plaintiff*

Dated: _____    _____
Timothy D. Cedrone
General Counsel

*Lafayette College*

34

**IN WITNESS WHEREOF**, the Parties hereto have caused this Settlement to be executed, by their duly authorized attorneys, as of the date stated above.

Dated: March 21, 2025

**LYNCH CARPENTER, LLP**

By: */s/ Nicholas A. Colella*
Nicholas A. Colella
1133 Penn Ave., Floor 5
Pittsburgh, PA 15222
nickc@lcllp.com

Dated: March 21, 2025

**LEEDS BROWN LAW, P.C.**

By: */s/ Anthony Alesandro*
Michael Tompkins
Anthony Alesandro
One Old Country Road, Suite 347
Carle Place, NY 11514
aalesandro@leedsbrownlaw.com

*Attorneys for the Named Plaintiff and the Putative Class*

Dated: March 21, 2025

**BALLARD SPAHR LLP**

By: */s/ Marcel S. Pratt*
Marcel S. Pratt
1735 Market Street, 51st Floor
Philadelphia, PA 19103
prattm@ballardspahr.com

*Attorney for Lafayette College*

Dated: _____

_____
Julia Jin-Wolfson

*Named Plaintiff*

Dated: March 21, 2025

*/s/ Timothy D. Cedrone*
_____
Timothy D. Cedrone
General Counsel

*Lafayette College*

34

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JULIA JIN-WOLFSON,<br><br>                    Plaintiff.<br><br>    v.<br><br>LAFAYETTE COLLEGE,<br><br>                    Defendant. | Case No. 5:23-cv-04005-JMG |

## [PROPOSED] ORDER GRANTING PLAINTIFF'S UNOPPOSED MOTION TO PRELIMINARILY APPROVE CLASS ACTION SETTLEMENT, CERTIFY THE CLASS, APPOINT CLASS COUNSEL, APPROVE PROPOSED CLASS NOTICE, AND SCHEDULE A FINAL APPROVAL HEARING

**WHEREAS**, Plaintiff Julia Jin-Wolfson ("Plaintiff" or "Named Plaintiff"), individually and as representative of the class defined below, and Defendant Lafayette College ("Defendant" or "Lafayette") (and with Plaintiff, the "Parties") have entered into a Settlement Agreement that was stipulated to on March 21, 2025, which, if approved, would resolve this class action ("Action").

**WHEREAS**, Plaintiff has filed a motion for preliminary approval of the proposed settlement ("Settlement") set forth in the Settlement Agreement, which Lafayette does not oppose, and the Court has reviewed and considered the motion, the supporting brief, the supporting declarations, the Settlement Agreement, and all exhibits thereto, including the proposed class notices (hereinafter, the "Notices"), and finds there is sufficient basis for granting preliminary approval of the Settlement, directing that the Short Form Notice be disseminated to the class, and setting a hearing at which the Court will consider whether to grant final approval of the Settlement;

1

**NOW, THEREFORE**, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, upon the agreement of the Parties, and after consideration of the Settlement and its exhibits,

**IT IS HEREBY ORDERED** that:

1.    Unless otherwise defined herein, defined terms used in this Order have the same meaning as defined in the Settlement Agreement.

2.    The representations, agreements, terms, and conditions of the Settlement, as embodied in the Settlement Agreement and the exhibits attached thereto, are preliminarily approved pending a Final Approval Hearing on the Settlement as provided herein.

3.    This Court finds that it has jurisdiction over the subject matter of this action and over all Parties to the Action.

4.    The Court finds that, subject to the Final Approval Hearing, the Settlement Agreement is fair, reasonable, and adequate, within the range of possible approval, and in the best interests of the Settlement Class Members set forth below. The Court further finds that the Settlement Agreement substantially fulfills the purposes and objectives of the class action and provides substantial relief to the Settlement Class Members without the risks, burdens, costs, or delay associated with continued litigation, trial, and/or appeal. The Court also finds that the Settlement Agreement: (a) is the result of arm's-length negotiations between experienced class action attorneys; (b) is sufficient to warrant that notice of the settlement and the Final Approval Hearing be disseminated to the Settlement Class Members; (c) meets all applicable requirements of law; and (d) is not a finding or admission of liability by the Defendant or any other person, nor a finding of the validity of any claims asserted in the Action or of any wrongdoing or any violation of law.

5.    For purposes of the proposed Settlement only, the Court preliminarily finds and determines that the Action may proceed as a class action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, and provisionally certifies the following Settlement Class:

> All Lafayette College students whose payment obligation of tuition and/or fees was satisfied for the Spring 2020 semester, and who were enrolled in at least one in-person on-campus class as of March 16, 2020.

Excluded from the Settlement Class are all Lafayette College students who received scholarships, grants, or credits that equaled or exceeded their total payment obligations to Lafayette for the Spring 2020 semester, or who were otherwise not obligated to make contributions, payments or third-party arrangements towards tuition or fees for the Spring 2020 semester.

6.    For purposes of the proposed Settlement only, the Court preliminarily finds and determines, pursuant to Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure, as follows: (a) that the members of the Settlement Class are so numerous that their joinder in the Action would be impracticable; (b) that there are questions of law and fact common to the Settlement Class, and that those questions predominate over any individual questions; (c) that the claims of Named Plaintiff in the Action are typical of the claims of the Settlement Class; (d) that the Named Plaintiff and Class Counsel will fairly and adequately protect the interests of the Settlement Class; and (e) that a class action is superior to other available methods for fairly and efficiently adjudicating the Action.

7.    For purposes of the proposed Settlement only, the Court preliminarily appoints Named Plaintiff Julia Jin-Wolfson as Settlement Class Representative.

8.    For purposes of the proposed Settlement only, the Court preliminarily appoints Nicholas A. Colella of Lynch Carpenter, LLP and Michael A. Tompkins and Anthony M. Alesandro of Leeds Brown Law, P.C. as Class Counsel to act on behalf of the Settlement Class

3

and the Settlement Class Representatives with respect to the Settlement. The Court preliminarily authorizes Class Counsel to enter into the Settlement on behalf of the Settlement Class Representative and the Settlement Class, and to bind them all to the duties and obligations contained therein, subject to final approval by the Court of the Settlement.

9.      The Court appoints RG/2 Claims Administration to administer the Notice procedure and distribute the Net Settlement Fund, under the supervision of Class Counsel.

10.     Having reviewed the proposed Short Form Notice of Proposed Class Action Settlement and Hearing ("Short Form Notice"), and the proposed Long Form Notice of Proposed Class Action Settlement and Hearing ("Long Form Notice"), submitted by the Parties as Exhibits A-1 and A-2 to the Settlement, the Court approves, as to form and content, such Notices.

11.     Within thirty (30) days after the entry of this Order, Lafayette shall produce to the Settlement Administrator a list from the College's records that includes the names and last known personal email and permanent postal addresses, to the extent available, belonging to all Potential Settlement Class Members.[1]

12.     Within forty-five (45) days after the entry of this Order, the Settlement Administrator shall send, via email to persons listed on the Class List, the Short Form Notice substantially in the form submitted to the Court; and if an email address is not listed for a Potential Settlement Class Member on the Class List, such Short Form Notice shall be sent by the Settlement Administrator to the Potential Settlement Class Member's last known permanent mailing address via U.S. mail.

---

[1]    Consistent with the requirements of the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g, and associated regulations, 34 C.F.R. Part 99 (collectively, "FERPA"), Lafayette may disclose directory information to the Settlement Administrator. *See* 34 C.F.R. § 99.37. This Order shall constitute a judicial order permitting disclosure of information necessary to effectuate this settlement within the meaning of FERPA, *see* 34 C.F.R. § 99.31(a)(9)(i), and the Settlement and the Court's order shall constitute specific notice of Lafayette's intention to comply with this order, *see* 34 C.F.R. § 99.31(a)(9)(ii).

13.    No later than forty-five (45) days after the entry of this Order, and before the issuance of the Short Form Notice, the Settlement Administrator shall establish the Settlement Website, which shall include, when available, in downloadable format, the following: : (i) the Long Form Notice; (ii) the memorandum in support of the motion for preliminary approval of the Settlement and the Preliminary Approval Order; (iii) the Settlement (including all of its exhibits); (iv) the Election Form; (v) the memoranda in support of the motion for final approval of the Settlement and the motion for attorneys' fees; and (vi) any other materials agreed upon by the Parties and/or required by the Court. The Election Form shall allow Settlement Class Members to provide an updated mailing address to receive a paper check, or to elect to receive their Settlement Benefit via Venmo or PayPal.

14.    Prior to the Final Approval Hearing, in connection with the motion for final approval of the Settlement, Class Counsel shall serve and file a sworn statement from the Settlement Administrator evidencing compliance with the provisions set forth above concerning the distribution of Notice to the Settlement Class.

15.    The Court finds and determines that (a) emailing or mailing the Short Form Notice, (b) creating the Settlement Website, and (c) posting of the Long Form Notice on the Settlement Website, all pursuant to this Order, constitute the best notice practicable under the circumstances, constitute due and sufficient notice of the matters set forth in the Notices to all persons entitled to receive such Notices, and fully satisfy the requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and all other applicable laws and rules.

16.    Any person falling within the definition of the Potential Settlement Class may, upon request, be excluded or "opt-out" from the Settlement Class. No Potential Settlement Class

Member may both opt-out of and object to the Settlement; a Potential Settlement Class Member must decide whether to opt-out of the Settlement or to object to the Settlement.

17.     Any person who desires to request exclusion from the Settlement Class must submit a written request for exclusion in the form and manner required by the Long Form Notice. Such written request for exclusion must be mailed to the Settlement Administrator such that it is postmarked no later than forty-five (45) days after the issuance of the Short Form Notice (the "Objection/Exclusion Deadline"), which date shall be included in the Short Form Notice.

18.     The written request for exclusion must:

      (a)  include a statement requesting exclusion from the Settlement Class;

      (b)  be personally signed by the Potential Settlement Class Member; and

      (c)  include the Potential Settlement Class Member's name, address, telephone number, email address, and the caption for the Action.

19.     A request to be excluded from the Settlement Class that does not include all of the foregoing information in Paragraph 18, that is sent to an address other than that designated in the Long Form Notice, or that is not postmarked within the time specified, shall be invalid, and any individual sending such request shall be deemed to remain in the Settlement Class and shall be bound as a Settlement Class Member by the Settlement, if approved by the Court. Any Potential Settlement Class Member who properly elects to be excluded, in compliance with the requirements set forth in Paragraphs 17-18, shall not: (a) be bound by any orders of the Court or the Final Judgment; (b) be entitled to relief under the Settlement; (c) gain any rights by virtue of the Settlement; or (d) be permitted to object to any aspect of the Settlement.

20.     A request to be excluded from the Settlement Class must be personal. No person or entity other than a particular Potential Settlement Class Member may opt that Potential

Settlement Class Member out of the Settlement Class, including on a class or representative basis.

21.     Lafayette has the right to audit the exclusion process for evidence of fraud or error, and the Court will be the final arbiter of an exclusion's validity. As set forth in the Settlement Agreement, Lafayette has the unilateral right, in its sole discretion, to terminate the Settlement Agreement if the number of exclusions reaches five (5) percent of the Potential Settlement Class Members.

22.     Any motion for final approval of the Settlement and final certification of the Settlement Class for settlement purposes only, shall be filed by Class Counsel, in coordination with Lafayette's Counsel, no later than ten (10) days prior to the Final Approval Hearing.

23.     At least ten (10) days before the Final Approval Hearing, the Settlement Administrator shall file with the Court a listing of all Potential Settlement Class Members who have opted out of the Settlement Class and all Class Members' objections to the Settlement or to Class Counsel's request for attorneys' fees.

24.     No less than seventy-five (75) days following the issuance of the Short Form Notice (i.e., no less than 120 days from the date of this Order), this Court will hold a hearing in the United States District Court for the Eastern District of Pennsylvania, **U.S. Courthouse, Courtroom ___, 504 W. Hamilton Street, Allentown, PA 18101, at _____ on _____, 2025** ("Final Approval Hearing"), to determine: (a) whether the Settlement should be approved as fair, reasonable, and adequate to the Settlement Class; (b) whether the proposed manner of distribution of the Net Settlement Fund should be approved as fair, reasonable, and adequate to the Settlement Class; (c) whether to approve the application of Class Counsel for an award of Attorneys' Fees and Litigation Expenses; (d) whether to approve the payment of a Case Contribution Award to the

7

Settlement Class Representative; (e) whether a Final Judgment should be entered; and (f) the disposition of any other matters properly brought before the Court in connection with the Settlement. The Final Approval Hearing is subject to continuation or adjournment by the Court without further notice to the Settlement Class beyond updates to the Settlement Website. The Final Approval Hearing may be held in person, telephonically, or remotely via Zoom or other electronic platform without further notice. The Settlement Administrator shall post information about the Final Approval Hearing on the Settlement Website, and any interested persons should check the Settlement Website for any changes to the date of the Final Approval Hearing or the manner in which it will be held.

25.     Any Settlement Class Member may enter an appearance in the Action, at their own expense, individually or through counsel of their own choice. If a Settlement Class Member does not enter an appearance, they will be deemed represented by Class Counsel.

26.     Any Settlement Class Member may object to the Settlement, the manner of distribution of the Net Settlement Fund, the application for Case Contribution Award, the Fee Award, and/or the Litigation Expense Award, or may appear at the Final Approval Hearing and show cause, if any, why the Settlement should not be approved as fair, reasonable, and adequate to the Settlement Class, why a Final Judgment should not be entered thereon, why the Case Contribution Award should not be approved, or why the Fee Award or Litigation Expense Award should not be approved. Any such objection must be in the form and manner required by the Long Form Notice.

27.     No Settlement Class Member or other person will be heard on such matters unless they have postmarked no later than the Objection/Exclusion Deadline a written objection that: (a) states that the person objecting is a Settlement Class Member; (b) includes the name, address,

email, and telephone number of the Settlement Class Member objecting; (c) is personally signed by the objecting Settlement Class Member; (d) contains a statement that includes all objections, states whether each objection applies only to the objector, to a subset of the Settlement Class, or to the entire Settlement Class, and states the specific reasons for all objections, including any legal arguments and evidentiary support (including copies of any documents relied upon); (e) includes a statement of whether the objector intends to appear at the Final Approval Hearing, with or without counsel; and (f) is otherwise in the form and manner required by the Long Form Notice. Such written objections, briefs, papers, and statements must be filed with the Court, and copies must be delivered by mail, hand, or overnight delivery services at the same time to the following counsel:

Nicholas A. Colella
LYNCH CARPENTER, LLP
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222

-and-

Anthony M. Alesandro
LEEDS BROWN LAW, P.C.
One Old Country Road, Suite 347
Carle Place, NY 11514

*Class Counsel*

Marcel S. Pratt
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103

*Counsel for Lafayette College*

28.     If a Settlement Class Member objects to the Settlement and the Settlement is nonetheless approved by the Court, then the objecting Settlement Class Member is a member of the Settlement Class and will receive their share of the Net Settlement Fund and Non-Cash Benefit.

29.     If any Settlement Class Member does not make an objection in the form and manner set forth above and in the Long Form Notice, with copies to designated counsel for each of the Parties, they shall not be permitted to object to the Settlement, the Case Contribution Awards and/or the Fee Award at the Final Approval Hearing; shall be foreclosed from seeking any review of the Settlement, the Case Contribution Awards and/or the Fee Award by appeal or other means; and shall be deemed to have waived their objection(s) and be forever barred from making any such objection(s) in the Action or any other related action or proceeding.

30.     This Order shall constitute a "judicial order" within the meaning of the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g and 34 C.F.R. § 99.31(a)(9), sufficient to compel Lafayette to provide the "Class List" regarding Settlement Class Members (*i.e.*, directory information, as FERPA defines that term) to the Settlement Administrator in accordance with this Order.

31.     Upon the Effective Date as defined in Paragraph 1(g) of the Settlement Agreement, the Releasing Settlement Class Parties shall have fully, finally, and forever released all Released Claims against the Released Lafayette Parties, and shall forever be barred and enjoined from prosecuting any or all of the Released Claims against any of the Released Lafayette Parties.

32.     Upon the Effective Date as defined in Paragraph 1(g) of the Settlement Agreement, only persons who are Settlement Class Members shall have rights in the distribution of the Settlement Fund and Non-Cash Benefit created by the Settlement, except as provided in the Settlement.

33. All funds held by the Escrow Agent shall be deemed and considered to be *in custodia legis* of the Court and shall remain subject to the jurisdiction of the Court until such time as the funds are distributed pursuant to the Settlement or further order of the Court.

34. The application for attorneys' fees and litigation expenses must be filed at least fourteen (14) days prior to the Objection/Exclusion Deadline.

## Further Matters

35. All further proceedings in the Action are ordered stayed until Final Judgment or termination of the Settlement, whichever occurs earlier, except for those matters necessary to obtain and/or effectuate final approval of the Settlement.

36. Members of the Settlement Class shall be bound by all determinations and judgments concerning the Settlement and Final Judgment as to the same, whether favorable or unfavorable.

37. The Court retains jurisdiction to consider all further applications arising out of or in connection with the Settlement. The Court may approve the Settlement with such modifications as may be agreed by the Parties, if appropriate, without further Notice to the Settlement Class.


Dated: _____          _____
                                        Hon. John M. Gallagher
                                        United States District Judge

# EXHIBIT A-1

**Subject: NOTICE OF PROPOSED CLASS ACTION SETTLEMENT**
in *Jin-Wolfson v. Lafayette College*, Civil Action No. 5:23-cv-4005 (E.D. Pa.)

**PLEASE READ THIS NOTICE CAREFULLY**.
If you were a student enrolled at Lafayette College ("Lafayette") during the Spring 2020 semester whose payment obligation of tuition and/or fees was satisfied for the Spring 2020 semester, and were enrolled in at least one in-person on-campus class as of March 16, 2020, you may be eligible to receive a payment as part of a proposed settlement of *Jin-Wolfson v. Lafayette College*, Civil Action No. 5:23-cv-4005 (E.D. Pa.) (the "Action").

In this Action, Plaintiff alleged Lafayette breached a contract when it transitioned to remote learning in response to the COVID-19 pandemic. Plaintiff also alleged that Lafayette's shift to remote learning gave rise to a claim of unjust enrichment. Plaintiff sought a refund of a portion of the tuition and mandatory fees for the Spring 2020 semester. Lafayette denies all allegations of wrongdoing. **There has been no finding of liability in any court**. However, considering the interest of both Lafayette and the Settlement Class Members in prompt resolution of the matter, Lafayette and Plaintiff have agreed that Lafayette will pay $456,750 into a Settlement Fund to resolve the Action, and will provide five (5) complimentary tickets to regular season Lafayette basketball (men's or women's) or football games on Lafayette's campus, to be used between July 1, 2026 and June 30, 2027, and subject to certain other conditions set forth in the Settlement Agreement.

**Am I a Class Member?**  If you were a student enrolled at Lafayette during the Spring 2020 semester whose payment obligation of tuition and/or fees was satisfied for the Spring 2020 semester, and were enrolled in at least one in-person on-campus class as of March 16, 2020, then **you are part of the proposed settlement class (a "Potential Settlement Class Member").  If you are a Potential Settlement Class Member, you do not have to do anything to participate in and receive the benefits of the proposed Settlement.**

**How Do I Get a Payment?**  Your Settlement Benefit, in the form of a paper check, will be sent automatically by first class U.S. Mail to your permanent mailing address currently on file with Lafayette. Class Members will also have the option to visit the Settlement Website at www.PLACEHOLDER.com to either: (a) provide an updated address for sending a check; or (b) elect to receive the Settlement Benefit by Venmo or PayPal instead of via a paper check. This action must be taken no later than forty-five (45) days after the Effective Date (as defined in the proposed Settlement Agreement). That date will also be posted on the Settlement Website when it is confirmed, and will be at some time after the Final Approval Hearing currently scheduled for [DATE].

By participating in the proposed Settlement, you release your right to bring any claim covered by the proposed Settlement, including bringing any claim related to Lafayette's transition to remote learning in the Spring 2020 semester, or joining any other action against Lafayette related to Lafayette's transition to remote learning in the Spring 2020 semester.

**What Are My Other Options?**  If you do not want to participate in this proposed Settlement—meaning you do not want to receive the Settlement Benefit or Non-Cash Benefit, and you do not want to be bound by any judgment entered in this case—you may exclude yourself by mailing a signed opt-out request to the Settlement Administrator, which must be postmarked no later than [OPT-OUT DATE]. (Be aware that the statute of limitations may impact your ability to file your own lawsuit.) If you instead want to object to this proposed Settlement because you think it is not fair, adequate, or reasonable, you may submit an objection, which must be postmarked no later than [OBJECTION DATE]. Please follow the detailed instructions outlined in the Long Form Notice and the Settlement Agreement, which can both be found at www.PLACEHOLDER.com, to properly opt-out from or object to the proposed Settlement.

**What Happens Next?**  The Court has preliminarily approved the proposed Settlement, but the distribution of payments will occur only if the Court grants final approval of the proposed Settlement. The Final Approval Hearing in this case is scheduled for [DATE]. At that hearing, the Court will consider whether to grant final approval of the proposed Settlement, and whether to approve payment from the Settlement Fund of: (1) an award to the Settlement Class Representative for her service in this litigation; and (2) Class Counsel's requested attorneys' fees, which will not exceed thirty-three and one-third percent (33.3%) of the Settlement Fund and will be posted on the Settlement Website after [DEADLINE FOR MOTION FOR FEES], and reimbursement for their litigation costs.

**You are encouraged to review the Long Form Notice.**
**To review the Long Form Notice, as well as other important documents, including the Settlement Agreement, and to obtain more information about the proposed Settlement, please visit www.PLACEHOLDER.com.**

**If you have any questions, you can contact Class Counsel:**
**Nicholas A. Colella at Lynch Carpenter, LLP, (412) 322-9243, or**
**Anthony M. Alesandro at Leeds Brown Law, P.C., (516) 873-9550.**

**You can also contact the Settlement Administrator by calling toll-free [PLACE HOLDER], or by emailing [PLACE HOLDER].**

**PLEASE DO NOT CONTACT THE COURT OR LAFAYETTE CONCERNING THIS NOTICE OR THE PROPOSED SETTLEMENT.**

# EXHIBIT A-2

## NOTICE OF PROPOSED SETTLEMENT OF CLASS ACTION LAWSUIT

*Jin-Wolfson v. Lafayette College*, Civil Action No. 5:23-cv-4005 (E.D. Pa.)

**ATTENTION: ALL STUDENTS ENROLLED AT LAFAYETTE COLLEGE DURING THE SPRING 2020 SEMESTER WHOSE PAYMENT OBLIGATION OF TUITION AND/OR FEES WAS SATISFIED, AND WHO WERE ENROLLED IN AT LEAST ONE IN-PERSON ON-CAMPUS CLASS AS OF MARCH 16, 2020**

**The United States District Court for the Eastern District of Pennsylvania has authorized this notice. It is not a solicitation from a lawyer. You are not being sued. If you have received a notice of this lawsuit in the mail or by e-mail, you have been identified as a person who is or may be a member of the settlement class in this lawsuit, and the proposed settlement of this lawsuit, if approved, may affect your legal rights. You should read this notice carefully.**

**If you were a student enrolled at Lafayette College ("Lafayette") during the Spring 2020 semester whose payment obligation of tuition and/or fees was satisfied for the Spring 2020 semester, and were enrolled in at least one in-person on-campus class as of March 16, 2020, then you are part of the proposed settlement class (a "Potential Settlement Class Member") affected by this lawsuit.**

The purpose of this notice is to inform you of a proposed Settlement relating to a class action lawsuit brought by Plaintiff, a student at Lafayette during the Spring 2020 semester, against Lafayette, on behalf of a putative class who paid tuition and/or fees for the Spring 2020 semester. The case is captioned *Jin-Wolfson v. Lafayette College*, Civil Action No. 5:23-cv-4005-JMG (E.D. Pa.) (the "Action").

In this Action, Plaintiff alleged Lafayette breached a contract or was unjustly enriched when it transitioned to remote learning in response to the COVID-19 pandemic. Lafayette denies all allegations of wrongdoing. **There has been no finding of liability in any court**. However, considering the interest of both Lafayette and the Settlement Class Members in prompt resolution of the matter, Lafayette and Plaintiff have agreed that Lafayette will pay $456,750 into a Settlement Fund to resolve the Action. The Parties have also agreed to a Non-Cash Benefit, discussed below in Answer 16.

The terms of the Settlement are set forth in a proposed Settlement Agreement that must be approved by the United States District Court for the Eastern District of Pennsylvania. This notice includes information about (a) the proposed Settlement, (b) the Final Approval Hearing to be held by the Court, and (c) the process for being heard by the Court.

**SUMMARY OF THE OPTIONS AND THE LEGAL EFFECT OF
EACH OPTION FOR SETTLEMENT CLASS MEMBERS**

| YOUR OPTIONS | INSTRUCTIONS | DUE DATE |
|---|---|---|
| **DO NOTHING AND AUTOMATICALLY RECEIVE A PAYMENT** | Your payment will be sent automatically by first class U.S. Mail to your last known permanent mailing address on file with the College. Class Members will also have the option (but are not required) to visit the Settlement Website at www.PLACEHOLDER.com to either: (a) provide an updated address to which a check will be mailed; or (b) elect to receive the Settlement Benefit by Venmo or PayPal instead of via paper check. | See **Answer 9 (below)** |
| **EXCLUDE YOURSELF ("OPT OUT") FROM THE PROPOSED SETTLEMENT** | You can choose to "opt out" of the proposed Settlement. Opting out means that you choose not to participate in the proposed Settlement. It also means that you **cannot object** to the proposed Settlement (see below). If you opt out, you will not receive a payment and you will keep any individual claims you may have against Lafayette relating to the transition to remote learning in the Spring 2020 semester. (However, the statute of limitations may impact your ability to file your own lawsuit.) For more detailed opt-out instructions, see **Answer 11** (below). | Submission must be postmarked no later than OPT-OUT DEADLINE. See **Answers 10-11** (below). |
| **OBJECT TO THE PROPOSED SETTLEMENT AND/OR REQUEST FOR ATTORNEYS' FEES** | You can file an objection with the Court explaining why you believe the Court should reject the proposed Settlement or the request for attorney's fees by Class Counsel. If your objection is overruled by the Court and the proposed Settlement is approved, then you would be included in the Settlement Class. If the Court agrees with your objection, then the proposed Settlement may not be approved. If you choose to object, you may not also opt out of the proposed Settlement, as only participating class members may object to a | Submission must be postmarked no later than OBJECTION DEADLINE. See **Answers 12-15** (below). |

| | proposed Settlement. For more detailed objection instructions, see Answer 12 below. | |
|---|---|---|

These rights and options—and the deadlines to exercise them—are explained further below in this notice, along with the material terms of the proposed Settlement.

## BASIC INFORMATION

### 1.     What is this lawsuit about?

The class action being settled is captioned *Jin-Wolfson v. Lafayette College*, Civil Action No. 5:23-cv-4005 (E.D. Pa.). This case is a putative class action, meaning that the Settlement Class Representative—Julia Jin-Wolfson—brought this action as an individual, acting on behalf of a putative class of all people who paid tuition and/or fees for the Spring 2020 semester at Lafayette. The Settlement Class Representative alleged claims for breach of contract and unjust enrichment. Lafayette denies all allegations of wrongdoing, and there has been no finding of liability in any court. After motions practice, discovery, and a comprehensive mediation, the Parties arrived at the proposed Settlement.

### 2.     Why did I receive notice of this lawsuit?

If you received notice of this lawsuit, it is because Lafayette's records indicate that you were enrolled at Lafayette during the Spring 2020 semester, satisfied your payment obligation for tuition and/or fees, and were registered for at least one in person class as of March 16, 2020. The Court directed that this notice be made available to all Potential Settlement Class Members because each member has a right to notice of the proposed Settlement and the options available to them before the Court decides whether to approve the proposed Settlement.

### 3.     How do I know if I am part of the Settlement Class?

If you were a student enrolled at Lafayette College ("Lafayette") during the Spring 2020 semester whose payment obligation of tuition and/or fees was satisfied for the Spring 2020 semester, and were enrolled in at least one in-person on-campus class as of March 16, 2020, then you qualify as a Potential Settlement Class Member.

### 4.     Why did the Parties settle?

In any lawsuit, there are risks and potential benefits that come with litigating as compared to settling. It is the Settlement Class Representative's and her lawyers' ("Class Counsel") job to identify when a proposed Settlement offer is sufficient and justifies settling the case instead of continuing to litigate. In a class action, class counsel determines when to recommend settling to the class representative. The class representative then has a duty to act in the best interests of the class as a whole when deciding whether to accept this recommendation. In this case, it is the

3

belief of the Settlement Class Representative and Class Counsel that this proposed Settlement is in the best interest of all Settlement Class Members.

Lafayette denies the claims asserted and believes that its actions were proper and in accordance with the terms of its policies, agreements, and applicable law. Lafayette denies that its actions give rise to any claim by the Settlement Class Representative or any Settlement Class Members. However, given the benefit Lafayette and the Settlement Class Members will receive from a negotiated settlement and prompt resolution of the case, the Parties consider it desirable to resolve the Action.

**5.      What must happen for the proposed Settlement to be approved?**

The Court must decide that the proposed Settlement is fair, reasonable, and adequate before it will approve the proposed Settlement. At this time, the Court has already reviewed and decided to grant <u>preliminary</u> approval of the proposed Settlement, after which notice was disseminated to Potential Settlement Class Members. The Court will make a <u>final</u> decision regarding the proposed Settlement at a Final Approval Hearing, which is currently scheduled for [DATE].

<u>**YOUR OPTIONS**</u>

**6.      What options do I have with respect to the proposed Settlement?**

If you are a Potential Settlement Class Member, you have three options with respect to this proposed Settlement: (1) do nothing and be eligible to participate in the proposed Settlement and receive the Settlement Benefit and Non-Cash Benefit allocated to you according to the terms of the proposed Settlement; (2) opt out of – i.e., exclude yourself from – the proposed Settlement; or (3) participate in the proposed Settlement, but object to it. Each of these options is described in greater detail below.

**7.      What are the details and deadlines related to my options?**

a.      If you do nothing, and the proposed Settlement is approved by the Court, you will be eligible to participate in the proposed Settlement and to receive the Settlement Benefit and Non-Cash Benefit allocated to you according to the terms of the proposed Settlement. Your payment will be sent automatically via first class U.S. Mail to your last known mailing address on file with the College. Class Members will also have the option, but are not required, to visit the Settlement Website at www.PLACEHOLDER.com to choose one or more of the following selections: (a) provide an updated address for sending a check; or (b) elect to receive the Settlement Benefit by Venmo or PayPal instead of a paper check. These actions must be taken no later than forty-five (45) days after the Effective Date, as defined in the proposed Settlement. That date will also be posted on the Settlement Website when it is known, but it will be some time after the Final Approval Hearing currently scheduled for [DATE].

b.      If you would like to opt out or object to the proposed Settlement, your request must be postmarked no later than <mark>OPT-OUT DEADLINE</mark>.

## 8.      How do I decide which option to choose?

If you would prefer not to participate in the proposed Settlement, then you may want to consider opting out. If you opt out, you will not receive a payment and you will keep any individual claims you may have against Lafayette relating to the transition to remote learning.

If you believe the proposed Settlement is unreasonable, unfair, or inadequate, and that the Court should reject the proposed Settlement, you may want to consider objecting to the proposed Settlement. The Court will decide if your objection is valid. If the Court agrees with your objection, then the proposed Settlement may not be approved. If your objection (or any other objection) is overruled, and the proposed Settlement is approved, then you will still receive a payment under the proposed Settlement and you will be bound by the proposed Settlement. Note that if you do not object to the proposed Settlement, and the proposed Settlement is later approved, you cannot appeal that approval order.

## 9.      Do I have to do anything if I want to participate in the proposed Settlement?

No. If you do nothing, and the proposed Settlement is approved by the Court, you will be eligible to participate in the proposed Settlement and to receive the Settlement Benefit allocated to you according to the terms of the proposed Settlement. Your Settlement Benefit, in the form of a paper check, will be sent by first class U.S. Mail to your permanent mailing address currently on file with Lafayette. Class Members will also have the option to visit the Settlement Website at <mark>www.PLACEHOLDER.com</mark> to either (a) provide an updated address for sending a check; or (b) elect to receive the Settlement Benefit by Venmo or PayPal instead of via a paper check. This action must be taken no later than forty-five (45) days after the Effective Date (as defined in the Settlement Agreement). That date will also be posted on the Settlement Website when it is confirmed, and  will be at some time **after** the Final Approval Hearing currently scheduled for [<mark>DATE</mark>].

## <u>OPTING OUT OF THE PROPOSED SETTLEMENT</u>

## 10.     What happens if I opt out of the proposed Settlement?

If you opt out of the proposed Settlement, you will preserve any claims you may have against Lafayette related to Lafayette's transition to remote learning. However, you will not be entitled to receive a payment from this proposed Settlement—assuming that the proposed Settlement is approved by the Court. Be aware that the statute of limitations may impact your ability to bring a lawsuit.

**11.     How do I opt out of the proposed Settlement?**

To opt out of the proposed Settlement, you must send a written request to the Settlement Administrator at: [insert], which must:

> a.     include a statement requesting to opt out of the Settlement Class;
>
> b.     be personally signed by you;
>
> c.     include your name, address, telephone number, email address; and
>
> d.     include the caption for the Action: *Jin-Wolfson v. Lafayette College*, Civil Action No. 5:23-cv-4005 (E.D. Pa.).
>
> e.     be postmarked no later than OPT-OUT DEADLINE.

A request to opt out of the proposed Settlement that does not meet the above requirements, or that is sent to an address other than that of the Settlement Administrator, **will be invalid**, and the person sending the defective request will remain in the Settlement Class and, if the proposed Settlement is approved by the Court, will receive a payment and the Non-Cash Benefit, and will be bound by the proposed Settlement.

Requests to opt out of the proposed Settlement must be done on an individual basis. A Potential Settlement Class Member cannot purport to opt others out of the proposed Settlement on either a class-wide or representative basis.

## <u>OBJECTING TO THE PROPOSED SETTLEMENT OR THE REQUEST FOR ATTORNEYS' FEES</u>

**12.     How do I object to the proposed Settlement or the request for attorneys' fees?**

You can object to the proposed Settlement, or the request for attorreys' fees by Class Counsel, so long as you do not opt out of the proposed Settlement, as only Settlement Class Members have the right to object to the proposed Settlement, including any attorneys' fees sought by Class Counsel. To have your objection considered by the Court at the Final Approval Hearing, your objection must:

> a.     include your name, address, telephone number, email address; and state that you are a Settlement Class Member;
>
> b.     be personally signed by you, the objecting Settlement Class Member;
>
> c.     contain a statement that (a) includes all objections, (b) states whether each objection applies only to the objector, to a subset of the Settlement Class, or to the entire Settlement Class, and (c) states the specific reasons for all objections,

including any legal arguments and evidentiary support (including copies of any documents relied upon); and

d.   state whether you wish to speak at the Final Approval Hearing, and whether you are represented by counsel.

Your objection and any accompanying papers must be filed with the Clerk of Court. If you are represented by counsel, the objection must be filed through the Court's electronic case filing (ECF) system. All objections must also be mailed at the same time to Class Counsel, Lafayette's Counsel, and the Settlement Administrator at the addresses below. All objections must be postmarked no later than ==OBJECTION DEADLINE==.

| Clerk of Court | Settlement Administrator | Class Counsel | Lafayette's Counsel |
|---|---|---|---|
| Clerk of the Court United States District Court for the Eastern District of Pennsylvania James A. Byrne U.S. Courthouse 601 Market Street Philadelphia, PA 19106 | RG/2 Claims Administration<br><br>[==INSERT==] | **LYNCH CARPENTER LLP** Attn: Nicholas A. Colella 1133 Penn Avenue, 5th Floor Pittsburgh, PA 15222<br><br>**LEEDS BROWN LAW P.C.** Attn: Anthony M. Alesandro One Old Country Road, Suite 347 Carle Place, NY 11514 | **BALLARD SPAHR LLP** Attn: Marcel S. Pratt 1735 Market Street, 51st Floor Philadelphia, PA 19103 |

**13.    What happens if I object to the proposed Settlement?**

If you object to the proposed Settlement, the Court will consider your objection at the Final Approval Hearing. If the Court sustains your objection, or the objection of any other Settlement Class Member, the proposed Settlement may not be approved. If you object, but the Court overrules your objection and any other objections and approves the proposed Settlement, then you will be bound by the proposed Settlement. You may appeal the approval order to the extent that it overrules your objection.

**14.    What is the difference between objecting and opting out of the proposed Settlement?**

**Objecting** to the proposed Settlement means (a) telling the Court that you do not believe the proposed Settlement to be fair, reasonable, and adequate for the Settlement Class, and (b) asking the Court to reject it. If you object to the proposed Settlement and the proposed Settlement is ultimately approved, then you are entitled to a payment and the Non-Cash Benefit, and will

release any claims related to Lafayette's transition to remote learning. **Opting out** of the proposed Settlement, however, means telling the Court (a) that you do not want to be a part of the proposed Settlement if it is approved, (b) that you do not want to receive a payment and Non-Cash Benefit, and (c) that you will not release claims you might have against Lafayette that would otherwise have been released by participating in the proposed Settlement.

**15.    Can I opt out <u>and</u> object to the proposed Settlement?**

No. To object to the proposed Settlement, you must participate in the proposed Settlement. Thus, you must choose between opting out or objecting to the proposed Settlement.

**THE PROPOSED SETTLEMENT BENEFITS**

**16.    How much is this proposed Settlement?**

The Parties have agreed to a Settlement Fund totaling $456,750. The Parties have also agreed to a Non-Cash Benefit for each Settlement Class Member of five (5) complimentary tickets to regular season Lafayette basketball (men's or women's) or football games on Lafayette's campus, to be used between July 1, 2026 and June 30, 2027, and subject to certain other conditions set forth in the Settlement Agreement.

As discussed in more detail below, attorneys' fees and costs, a contribution award for the Settlement Class Representative, and administrative fees, including the costs paid to a third-party Settlement Administrator, will be paid out of the Settlement Fund. Thereafter, the remaining funds—the Net Settlement Fund—will be divided among all Settlement Class Members entitled to payments as outlined in the proposed Settlement and discussed further below in Answer 20.

**17.    How much of the Settlement Fund will be used to pay for attorneys' fees and costs?**

Class Counsel will request that the Court approve attorneys' fees of not more than thirty-three and one-third percent (33.3%) of the Settlement Fund. Class Counsel will also request that they be reimbursed for their out-of-pocket costs incurred in litigating the Action. Class Counsel must submit their request to the Court by ==DEADLINE FOR MOTION FOR FEES==, at which point the amount of the requested attorneys' fees, as well as Class Counsel's motion, will be published on the Settlement Website at ==www.PLACEHOLDER.com==. The Court will then decide the amount of the attorneys' fees and costs based on a number of factors, including the risk associated with bringing the Action, the amount of time spent on the case, the magnitude and complexity of the Action, the quality of the work, and the requested fee in relation to the outcome of the Action.

**18.    How much of the Settlement Fund will be used to pay the Settlement Class Representative?**

Class Counsel will request that the Settlement Class Representative, Julia Jin-Wolfson, be paid an award in the amount of no more than $7,500, in recognition of her work in connection with this case. The award must be approved by the Court.

**19.    How much of the Settlement Fund will be used to pay administrative expenses?**

A third-party Settlement Administrator has been retained to provide notice and administer the payments to Settlement Class Members. The expenses of the Settlement Administrator are projected not to exceed $50,000. In the event that such expenses exceed $50,000, any additional amounts shall be paid only after approval by both Class Counsel and Lafayette's Counsel.

**20.    How much will my payment be?**

The balance of the Settlement Fund, after paying administrative expenses, attorneys' fees and costs, and any award to the Settlement Class Representative, will be known as the Net Settlement Fund. The Net Settlement Fund will be distributed equally to Settlement Class Members.

**21.    When will I receive my payment?**

The Court will hold a Final Approval Hearing on HEARING DATE to consider whether the proposed Settlement should be approved. If the Court approves the proposed Settlement, then payments will be distributed within sixty (60) days after the date upon which the proposed Settlement becomes final (as defined in the Settlement Agreement).

## THE FINAL APPROVAL HEARING

**22.    When and where will the Court decide whether to approve the proposed Settlement?**

The Court will hold a Final Approval Hearing on HEARING DATE at the United States District Court for the Eastern District of Pennsylvania, Edward N. Cahn U.S. Courthouse, 504 W. Hamilton Street, Allentown, PA 18101. At this hearing, the Court will consider whether the proposed Settlement is fair, reasonable, and adequate. If any objections have been properly submitted, the Court will consider them. The Court may also decide how much to award Class Counsel for attorneys' fees and litigation costs, and the amount of the award to the Settlement Class Representative. The hearing will be public. The hearing may be virtual; if so, the instructions for viewing the hearing and participating will be posted on the Settlement Website at www.PLACEHOLDER.com. The date and time of the Final Approval Hearing may change. If it does, the Settlement Website will be updated to reflect the new date and/or time, but no other notice will be provided. Please check the Settlement Website for updates.

**23.    Do I have to come to the Final Approval Hearing?**

No. Class Counsel will answer any questions the Court may have. You may attend if you desire to do so. If you have properly submitted an objection, the Court will consider your objection regardless of whether you attend.

**24.    May I speak at the Final Approval Hearing?**

If you are a Settlement Class Member, you may ask the Court for permission to speak at the Final Approval Hearing. If you are objecting and would like to speak at the Final Approval Hearing, you must state in your objection, as described in Answer 12 (above), that you wish to be heard at the Final Approval Hearing.

## THE LAWYERS REPRESENTING THE CLASS

**25.    Do I have a lawyer in this case?**

The Court has ordered that Nicholas A. Colella of Lynch Carpenter, LLP and Michael A. Thompkins and Anthony M. Alesandro of Leeds Brown Law, P.C. will serve as Class Counsel and will represent all Settlement Class Members in this matter.

**26.    Do I have to pay the lawyers bringing this suit on behalf of the Settlement Class?**

No. Class Counsel will be paid directly from the Settlement Fund, subject to the Court's approval.

**27.    Who determines what the attorneys' fees will be?**

The Court will be asked to approve the amount of attorneys' fees at the Final Approval Hearing. Class Counsel will file an application for attorneys' fees, which shall not exceed thirty-three and one-third percent (33.3%) of the Settlement Fund, plus their out-of-pocket litigation costs, and will specify the amount being sought. Class Counsel must submit its request to the Court by DEADLINE FOR MOTION FOR FEES, at which point the amount of the requested attorneys' fees and costs, as well as Class Counsel's motion, will be published on the Settlement Website at www.PLACEHOLDER.com. Settlement Class Members who wish to object to the amount of attorneys' fees sought by Class Counsel may do so by following the instructions described in Answer 12 (above).

## FOR MORE INFORMATION

This notice only summarizes the proposed Settlement. More details are contained in the Settlement Agreement, which can be viewed or obtained online at www.PLACEHOLDER.com. In the event of any inconsistency between the Settlement Agreement and this notice, the Settlement Agreement will govern.

For additional information about the proposed Settlement, you should contact the Settlement Administrator as follows:

RG/2 Claims Administration
[CONTACT INFORMATION]

For more information, you may also contact Class Counsel:

**LYNCH CARPENTER, LLP**
Attn: Nicholas A. Colella
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
(412) 322-9243
NickC@lcllp.com

**LEEDS BROWN LAW, P.C.**
Attn: Anthony Alesandro
One Old Country Road, Suite 347
Carle Place, NY 11514
Telephone: (516) 873-9550
AAlesandro@LeedsBrownLaw.com


**PLEASE DO NOT CONTACT THE COURT OR LAFAYETTE
CONCERNING THIS NOTICE OR THE PROPOSED SETTLEMENT.**

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| JULIA JIN-WOLFSON,<br><br>　　　　　　　　Plaintiff.<br><br>　v.<br><br>LAFAYETTE COLLEGE,<br><br>　　　　　　　　Defendant. | Case No. 5:23-cv-04005-JMG |

## [PROPOSED] FINAL JUDGMENT

**WHEREAS**, the Parties to the above-captioned putative class action (the "Action") executed a Settlement Agreement dated as of March 21, 2025 (the "Settlement");

**WHEREAS**, on _____, 2025, the Court entered an Order Granting Plaintiff's Unopposed Motion to Preliminarily Approve Class Action Settlement, Certify the Class, Appoint Class Counsel, Approve Proposed Class Notice, and Schedule a Final Approval Hearing ("Preliminary Approval Order"), which, *inter alia*: (i) preliminarily approved the Settlement; (ii) preliminarily determined that, for purposes of the Settlement only, the Action should proceed as a class action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of the Settlement Class defined as:

> All Lafayette College students whose payment obligation of tuition and/or fees was satisfied for the Spring 2020 semester, and who were enrolled in at least one in-person on-campus class as of March 16, 2020.
>
> Excluded from the Settlement Class are all Lafayette College students who received scholarships, grants, or credits that equaled or exceeded their total payment obligations to Lafayette for the Spring 2020 semester, or who were otherwise not obligated to make contributions, payments or third-party arrangements towards tuition or fees for the Spring 2020 semester.

1

(iii) preliminarily appointed Named Plaintiff Julia Jin-Wolfson as Settlement Class Representative; (iv) preliminarily appointed Nicholas A. Colella of Lynch Carpenter, LLP and Michael A. Tompkins and Anthony M. Alesandro of Leeds Brown Law, P.C. as Class Counsel; (v) approved the forms and manner of notice of the Settlement to Potential Settlement Class Members; (vi) directed that appropriate notice of the Settlement be given to the Potential Settlement Class; and (vii) set a hearing date to consider final approval of the Settlement;

WHEREAS, on _____, 2025, notice of the Settlement was provided to Potential Settlement Class Members in accordance with the Court's Preliminary Approval Order;

WHEREAS, on _____, 2025, Class Counsel filed their Motion for Award of Attorneys' Fees, Costs, and Case Contribution Award to Settlement Class Representative and accompanying Memorandum of Law and supporting exhibits ("Fee Application");

WHEREAS, on _____, 2025, Named Plaintiff filed her Motion for Final Approval of Class Action Settlement ("Final Approval Motion") and accompanying Memorandum of Law and supporting exhibits;

WHEREAS, on _____, 2025, at _____ at the United States District Court for the Eastern District of Pennsylvania, U.S. Courthouse, Courtroom ___, 504 W. Hamilton Street, Allentown, PA 18101, this Court held a hearing to determine whether the Settlement was fair, reasonable, and adequate to the Settlement Class (the "Final Approval Hearing"); and

WHEREAS, based on the foregoing, having considered the papers filed and proceedings held in connection with the Settlement and all other files, records, and proceedings in the Action, and being otherwise fully advised,

**THE COURT HEREBY FINDS AND CONCLUDES** that:

A.    This Court has subject matter jurisdiction to approve the Settlement Agreement, including all exhibits thereto, as well as personal jurisdiction over all the Parties and all Settlement Class Members for purposes of the Settlement.

B.    This Order incorporates the definitions in the Settlement and all terms used in the Order have the same meanings as set forth in the Settlement, unless otherwise defined herein.

C.    The Short Form Notice and Long Form Notice (the "Notices") provided to the Potential Settlement Class Members in accordance with the Preliminary Approval Order constituted the best notice practicable under the circumstances; constituted notice that was reasonably calculated, under the circumstances, to apprise the Settlement Class of the pendency of this Action, their right to object to or exclude themselves from the proposed Agreement, and to appear at the Final Approval Hearing; was reasonable and constituted due, adequate, and sufficient notice of the proceedings and matters set forth therein, including of the Settlement, to all persons entitled to receive notice; and met all applicable requirements of the Federal Rules of Civil Procedure, the Due Process Clause of the United States Constitution, and the rules of this Court.

D.    The notice provisions of the Class Action Fairness Act, 28 U.S.C. § 1715, have been satisfied.

E.    For purposes of the Settlement only, the Action may proceed as a class action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure.

F.    Class Counsel and the Settlement Class Representative have fairly and adequately represented the Settlement Class, both with respect to litigation of the Action and for purposes of negotiating, entering into, and implementing the Settlement. Class Counsel and the Settlement

Class Representative have satisfied the requirements of Rules 23(a)(4) and 23(g) of the Federal Rules of Civil Procedure.

G.     Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the Court grants final approval of the Settlement, as: (i) it is in all respects fair, reasonable, and adequate as to, and in the best interests of, the Settlement Class; (ii) it was the product of informed, good faith, arm's-length negotiations among competent, able counsel, and the negotiations were, in part, facilitated by an experienced professional mediator, Hon. Thomas J. Rueter (Ret.); (iii) it was based on a record that is sufficiently developed to have enabled the Settlement Class Representative and Lafayette to adequately evaluate their positions; (iv) the relief provided to the Settlement Class is adequate, taking into account the costs, risks, and delay of continued litigation and the effectiveness of the plan of allocation as outlined in the Settlement; (v) the Settlement treats Settlement Class Members equitably relative to one another; and (vi) the Settlement was positively received by the Settlement Class.

H.     There are no Settlement Class Members who have timely and validly requested exclusion from the Settlement Class.

I.     There are no Settlement Class Members who have timely and validly objected to the Settlement.

J.     The Settlement Class Representative and the Settlement Class Members, and all and each of them, are hereby bound by the terms of the Settlement.

**NOW, THEREFORE, IT IS HEREBY ORDERED AND ADJUDGED** that:

1.      The Settlement is fair, reasonable, and adequate as to, and in the best interests of, the Settlement Class.

2.      Pursuant to Rule 23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure, the Court grants final class certification, for settlement purposes only, of the Settlement Class that it provisionally certified in its Preliminary Approval Order, and finds that all of the requirements of Rule 23(a) and Rule 23(b)(3) have been satisfied.

3.      The Court confirms the appointment of Julia Jin-Wolfson as Settlement Class Representative.

4.      The Court confirms the appointment of Nicholas A. Colella of Lynch Carpenter, LLP and Michael A. Tompkins and Anthony M. Alesandro of Leeds Brown Law, P.C. as Class Counsel.

5.      The Court confirms the appointment of RG/2 Claims Administration as Settlement Administrator. It shall perform the duties and responsibilities as set forth in the Settlement Agreement with respect to the distribution of the Settlement Fund.

6.      The Court finds and confirms that the Settlement Fund is a "qualified settlement fund" as defined in Sections 468B-1 through 468B-5 of the Treasury Regulations.

7.      The Settlement is binding on and has *res judicata* and preclusive effect in all pending and future lawsuits or other proceedings maintained by or on behalf of Plaintiffs and Releasing Parties with respect to Released Claims.

8.      Final Judgment shall be, and hereby is, entered dismissing the Action (including all individual claims and Settlement Class claims presented thereby) on the merits and with prejudice, and without fees or costs to any Party, except as provided in the Settlement Agreement.

9. As of the Effective Date, the Releasing Settlement Class Parties shall be deemed to have, and by operation of law and of the Final Judgment shall have, fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, and discharged all Released Claims against the Released Lafayette Parties, and shall forever be barred and enjoined from filing, commencing, prosecuting, intervening in, or participating (as class members or otherwise) in any lawsuit or other action in any jurisdiction relating to or concerning any or all of the Released Claims against any of the Released Lafayette Parties. The Released Claims include any unknown claims that reasonably could have arisen out of the same facts alleged in the Action that the Releasing Parties do not know or suspect to exist in their favor at the time of the release, which, if known by them, might have affected their decision to agree to the Settlement, their decision to release the Released Claims, or their decision not to object to the Settlement.

10. The manner of distribution of the Net Settlement Fund and Non-Cash Benefit as described in the Settlement and in the Notices to Potential Settlement Class Members is hereby approved, subject to modification by further order of this Court, which may, at the discretion of the Court, be entered without further notice to the Settlement Class. Any order or proceedings relating to the manner of distribution of the Net Settlement Fund or Non-Cash Benefit, so long as they are not materially inconsistent with this Final Judgment, shall not operate to terminate or cancel the Settlement or affect the finality of this Final Judgment approving the Settlement.

11. Neither the Settlement nor this Final Judgment nor the fact of the Settlement is an admission or concession by Lafayette of any fault, wrongdoing, or liability whatsoever. This Final Judgment is not a finding of the validity or invalidity of any of the claims asserted or defenses raised in the Action. Nothing relating to the Settlement shall be offered or received in evidence as an admission, concession, presumption, or inference against Lafayette or the Released Lafayette

Parties in any proceeding, other than such proceedings as may be necessary to consummate or enforce the Settlement.

12.     Without affecting the finality of this Final Judgment in any way, the Court retains and reserves continuing and exclusive jurisdiction as to all Settlement Class Members and matters relating to administration, consummation, enforcement, and interpretation of the Settlement Agreement and the Final Judgment, and for any other necessary purpose.

13.     The Parties are hereby directed to implement and consummate the Settlement according to the terms and provisions of the Settlement Agreement, which are hereby approved and incorporated herein by reference.

14.     There is no just reason to delay the entry of this Final Judgment as a final judgment in this Action. Accordingly, the Clerk of the Court is expressly directed to immediately enter this Final Judgment in this Action and to close the case.

15.     In the event that this Final Judgment does not become Final in accordance with Paragraph 1(l) of the Settlement, then this Final Judgment shall be rendered null and void to the extent provided by and in accordance with the Settlement, and this Order shall be vacated. In such event, all orders entered and releases delivered in connection with the Settlement shall be null and void, except those necessary to effect termination of the Settlement. In such event, the Action shall return to its status immediately prior to execution of the Settlement.

16.     Plaintiff's Motion for Final Approval of Class Action Settlement (ECF No. XX) is **GRANTED**.


Dated: _____                _____
                                             Hon. John M. Gallagher
                                             United States District Judge